## PEOPLE v WOLFE

Docket No. 90730. Argued January 8, 1992 (Calendar No. 8). Decided
    August 31, 1992. Amended October 9, 1992, 441 Mich —.

Lemiel D. Wolfe was convicted by a jury in the Saginaw Circuit
    Court, Robert L. Kaczmarek, J., of possession with intent to
    deliver less than fifty grams of cocaine and possession of a
    firearm during the commission of a felony. The Court of Ap-
    peals, NEFF, P.J., and MAHER and HOOD, JJ., reversed both
    convictions in an unpublished opinion per curiam, finding that
    the prosecution had failed to present any evidence of possession
    with intent to deliver (Docket No. 113403). The people appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice
    CAVANAGH, and Justices LEVIN, BRICKLEY, RILEY, and MALLETT,
    the Supreme Court held:

Viewed in a light most favorable to the prosecution, the
    evidence presented at trial was sufficient to permit a rational
    jury to conclude that the defendant knowingly possessed the
    cocaine with the intent to deliver, but was insufficient to
    support the felony-firearm conviction.

1. In determining whether the prosecution has presented
    sufficient evidence to sustain a conviction, an appellate court
    must consider not whether there was any evidence to support
    the conviction, but when viewed in a light most favorable to
    the prosecution whether there was sufficient evidence to justify
    a rational trier of fact finding guilt beyond a reasonable doubt.
    So viewed in this case, the evidence presented at the trial was
    sufficient to permit a rational jury to conclude that the defen-
    dant knowingly possessed the cocaine and intended to deliver
    it.

2. To support such a conviction, the prosecution must prove

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons §§ 40-48.
Validity and construction of statute creating presumption or infer-
    ence of intent to sell from possession of specified quantity of
    illegal drugs. 60 ALR3d 1128.
Construction and effect of "sale" or "sell" in Uniform Narcotic
    Drug Act. 93 ALR2d 1008.
What constitutes "possession" of a narcotic drug proscribed by sec.
    2 of the Uniform Narcotic Drug Act. 91 ALR2d 810.

four elements: that the recovered substance was cocaine, that it was in a mixture weighing less than fifty grams, that the defendant was not authorized to possess the substance, and that the defendant knowingly possessed it with intent to deliver it. Because the jury had the opportunity to observe the demeanor of the witnesses in assessing their credibility, it was not irrational for it to reject the defendant's version of the facts in favor of the testimony offered by a codefendant and by the police officers who conducted a search of the premises where the cocaine was found.

3. Possession of a controlled substance may be actual or constructive. A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Likewise, possession may be found even where the defendant is not the owner of recovered narcotics. Moreover, actual or constructive possession may be joint. Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. In this case, the evidence showed constructive possession sufficient to permit the jury to conclude that the defendant knew the cocaine was present and that he had a right to exercise control over it.

4. Actual delivery of narcotics is not required to prove intent to deliver. Intent may be inferred from the quantity of narcotics, the way it is packaged, and circumstances surrounding an arrest. In this case, uncontradicted evidence was presented that cocaine was sold from the apartment, that it was packaged for sale in individual envelopes, that it was not possessed simply for personal use, and that the defendant was one of those persons who intended to sell it, sufficient to permit the jury to conclude that the defendant's guilt of possession with intent to deliver was proved beyond a reasonable doubt.

5. Because the Court of Appeals reversed the defendant's conviction of possession with intent to deliver, it found it unnecessary to decide whether sufficient evidence was presented to support his felony-firearm conviction.

Affirmed in part, reversed in part, and remanded.

Justice BOYLE, concurring in part and dissenting in part, stated that when determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. This standard underscores the critical differences between the functions of the trier of fact and a reviewing court. The trier of fact must be persuaded that the evidence it

believes and on which it relies is sufficiently strong to exclude a doubt based on reason regarding the defendant's innocence, while an appellate court must draw all reasonable inferences in favor of the prosecution, and then, if any reasonable juror could have found guilt beyond a reasonable doubt, must uphold the verdict.

The rule that mere presence is not enough to conclude that a defendant is guilty does not mean that a jury may not draw inferences regarding possession or intent to deliver from the defendant's presence in compromising circumstances. Where a reviewing court is presented with a record of historical facts that could support more than one inference, it must accept the inference drawn by the trier of fact and defer to that resolution as long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. An appellate court may not substitute its judgment for that of the trier of fact where additional evidence beyond mere presence has been presented.

Rather than decide the felony-firearm issue without the benefit of a full record, the case should be remanded to the Court of Appeals for further consideration.

CRIMINAL LAW — TRIAL — CONTROLLED SUBSTANCE — POSSESSION — INTENT TO DELIVER.

    To support a conviction of possession of less than fifty grams of a controlled substance with intent to deliver, the prosecution must prove that a controlled substance was recovered, that it was part of a mixture weighing less than fifty grams, that the defendant was not authorized to possess the substance, and that the defendant knowingly possessed it with intent to deliver; possession may be actual or constructive, and actual delivery is not required to prove intent to deliver; rather, intent may be inferred from the quantity of narcotics, the way it is packaged, and circumstances surrounding an arrest.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Michael D. Thomas,* Prosecuting Attorney, *Laura A. Chappelle,* Special Prosecuting Attorney, and *J. Thomas Horiszny,* Assistant Prosecuting Attorney, for the people.

*Marian Kromkowski* and *Matthew Posner* for the defendant.

GRIFFIN, J. In this case, defendant was convicted

by a jury on two counts: possession with intent to deliver less than 50 grams of cocaine,[1] and possession of a firearm during the commission of a felony.[2] Finding the evidence insufficient to support the conviction on the underlying drug charge, the Court of Appeals reversed both convictions. Upon review, we conclude that the evidence was sufficient respecting the first count but insufficient with regard to the second.

I

Defendant Lemiel David Wolfe and several companions were arrested on December 9, 1987, about two hours after an undercover police officer made a controlled purchase of crack cocaine at a second floor apartment on Sixth Street in the City of Saginaw.

The undercover officer approached the apartment at about 8:30 P.M. and asked for a "$10 rock" of crack cocaine. He then passed two marked $5 bills through an open window and received in exchange a small baggie containing crack cocaine. Shortly thereafter, the undercover officer obtained a warrant, and entered the apartment with several other officers to execute a search. They found six individuals in the apartment—four men, one woman, and a juvenile. In the group were defendant Lemiel Wolfe and Daven Rogers, as well as two other men, Anthony Winstead and Leonard Jones.

Items recovered in the search included a loaded 12-gauge shotgun and an unspecified number of packets of crack cocaine, which appeared to be packaged for individual sale. When the officers entered the back bedroom of the apartment they saw Winstead hovering over an open vent in the

[1] MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv).
[2] MCL 750.227b; MSA 28.424(2).

floor from which the grate had been removed. Additional packets of crack cocaine then were found beneath the vent in the apartment directly below. The total weight of all the crack cocaine recovered was less than fifty grams.

At trial, officers who participated in the search testified concerning the contents and appearance of the apartment. As they saw it, no one was living in the apartment. It contained only a few items of furniture—a couch, a refrigerator, and a broken television set. The apartment had no running water, and the toilet was not in working condition. It was apparent that the bath tub, partially filled with human excrement, was being used as a toilet.

Defendant Wolfe was arrested, searched, and found to be in possession of $265 in cash, including the two $5 bills that had been used for the controlled cocaine purchase. In addition, he had a beeper and a key to the back door of the apartment. Rogers was also arrested and searched. His possessions included a piece of paper with the number of defendant Wolfe's beeper written on it and an extra shell for the shotgun.

During the trial, Wolfe testified that he lived in Detroit, and that he had traveled to Saginaw to visit a friend, Sharon Jones, whose aunt lived in the first floor apartment directly below the second floor apartment on Sixth Street. The other men found in the second floor apartment were also from Detroit. Wolfe had invited them to Saginaw and instructed them to meet him at the Sixth Street apartment.

Wolfe and Rogers were jointly tried on charges of possession with intent to deliver less than fifty grams of cocaine and felony-firearm. Each was convicted on both counts; however, only the convic-

tions of defendant Wolfe are at issue in this appeal.

Finding the evidence insufficient, the Court of Appeals reversed the conviction of defendant Wolfe for possession with intent to deliver, and explained: "the evidence demonstrates, at best, that defendant was at the wrong place at the wrong time."[3] Then, in view of the absence of a conviction on the principal felony drug charge, the panel also reversed the felony-firearm conviction,[4] finding it unnecessary to review the sufficiency of the evidence with regard to that count.[5] We then granted leave to appeal. 437 Mich 1047 (1991).

II

In determining whether the prosecution has presented sufficient evidence to sustain a conviction, an appellate court is required to apply the standard adopted by this Court in *People v Hampton,* 407 Mich 354, 366; 285 NW2d 284 (1979), cert den 449 US 885 (1980). There, we stated that a reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a

---

[3] Unpublished opinion per curiam of the Court of Appeals, decided December 19, 1990 (Docket No. 113403), slip op, p 3. In his appeal, defendant also claimed that the trial court erred when it denied his request for a lesser included misdemeanor instruction to be given to the jury. Because the panel found the evidence to be insufficient, it did not consider the merits of this claim and that issue is not before us in this appeal.

[4] A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, section 227, 227a or 230, is guilty of a felony, and shall be imprisoned for 2 years. [MCL 750.227b(1); MSA 28.424(2)(1).]

[5] The panel did note, however, that it considered "the evidence relied upon to support the felony-firearm charge . . . more tenuous than that relied upon to support the drug offense." (Slip op, p 3, n 1.)

rational trier of fact in finding guilt beyond a reasonable doubt."

This standard was articulated by the United States Supreme Court in *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), and has been applied regularly in the courts of this state. See *Hampton, supra,* 407 Mich 366; *People v Petrella,* 424 Mich 221, 268; 380 NW2d 11 (1985); *People v Lewis,* 178 Mich App 464, 468; 444 NW2d 194 (1989). The sufficient evidence requirement is a part of every criminal defendant's due process rights. It is an attempt to give "concrete substance" to those rights, by precluding irrational jury verdicts. *Jackson, supra,* 443 US 315. As the *Jackson* Court explained:

> The [*In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970)] doctrine [requiring proof of guilt beyond a reasonable doubt] requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A "reasonable doubt," at a minimum, is one based upon "reason." Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt . . . . [443 US 316-317.]

Of course, appellate courts are not juries, and even when reviewing the sufficiency of the evidence they must not interfere with the jury's role:

> [An appellate court] must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the

evidence and decide the questions of fact. . . .
Juries, not appellate courts, see and hear wit-
nesses and are in a much better position to decide
the weight and credibility to be given to their
testimony. [*People v Palmer,* 392 Mich 370, 375-
376; 220 NW2d 393 (1974).]

With such considerations in mind, this Court
determined long ago that when an appellate court
reviews the evidence supporting a conviction, fac-
tual conflicts are to be viewed in a light favorable
to the prosecution:

In testing this case we are not required to take
that which respondent relies upon and that which
would tend against him, and from a comparison
thereof determine which was the stronger and
better, or deducting the one from the other, say
what, if anything, was left. This would be but a
weighing of the evidence and was entirely within
the province of the jury. Nor are we to take the
evidence in the order, question and answer, in
which it was given, but finding it where we may,
and putting what was most favorable to the pros-
ecution together, and discarding all other, can this
Court say it fairly tended to establish the charge
made? [*People v Howard,* 50 Mich 239, 242; 15 NW
101 (1883); see also *People v Chesbro,* 300 Mich
720, 723; 2 NW2d 895 (1942); *People v Szymanski,*
321 Mich 248, 254; 32 NW2d 451 (1948).]

In short, when determining whether sufficient evi-
dence has been presented to sustain a conviction, a
court must view the evidence in a light most
favorable to the prosecution and determine
whether any rational trier of fact could have
found that the essential elements of the crime
were proven beyond a reasonable doubt. *Hampton,*

*supra,* 407 Mich 368; *Petrella, supra,* 424 Mich 268.[6]

We turn now to consider whether the evidence presented in this case was sufficient.

III

In its opinion, the Court of Appeals concluded that the prosecution had failed to present *any* evidence of possession with intent to deliver. It stated:

> Our review of the record does not, however, indicate *any connection* between defendant and the cocaine dropped down the vent by Winstead. There is *no evidence* linking defendant to the prior drug sale to the undercover officer, or that he had given *any type* of assistance, support, encouragement to *anyone* regarding the possession or delivery of the cocaine. [Emphasis added. Slip op, p 3.]

We disagree. Viewed in a light most favorable to the prosecution, our review convinces us that the evidence presented at trial was sufficient to permit a rational jury to conclude that defendant Wolfe knowingly possessed the cocaine found at the Sixth Street apartment with the intent to deliver it.

As the Court of Appeals explained, to support a conviction for possession with intent to deliver less than fifty grams of cocaine, it is necessary for the prosecutor to prove four elements: (1) that the recovered substance is cocaine, (2) that the cocaine

---

[6] Typically, the sufficient evidence requirement is stated in terms of the trial court's duty when reviewing a motion for a directed verdict. *Hampton, supra,* 407 Mich 368. In this case, no motion for a directed verdict was made on the charge of possession with intent to deliver; however, the failure to make such a motion does not preclude appellate review of the question whether sufficient evidence was presented to support the conviction. *People v Patterson,* 428 Mich 502, 514; 410 NW2d 733 (1987).

·is in a mixture weighing less than fifty grams, (3) that defendant was not authorized to possess the substance, and (4) that defendant knowingly possessed the cocaine with the intent to deliver. *Lewis, supra* at 468.

Upon appeal, defendant has challenged the sufficiency of the evidence only with respect to the fourth element—that he knowingly possessed cocaine with intent to deliver. Defendant argued, and the Court of Appeals panel concluded, that he did not possess the cocaine or intend to deliver it to anyone. In its opinion, the panel recited facts as represented by the testimony of defendant Wolfe:

> At trial, defendant testified that he went to Saginaw to visit a friend. He arrived around 6:00 P.M. that evening and went to the Sixth Street apartments to visit Sharon Jones, whose relatives lived in the downstairs apartment. Defendant left shortly thereafter and went to another friend's house where he stayed until he returned to the Sixth Street apartment around 10:00 P.M. When he arrived, defendant spoke briefly with the downstairs residents, then joined his friends upstairs for a party. Defendant went to the local store for food and beer, after collecting money from the others. When he returned, Leonard Jones repaid a prior $20 debt, giving defendant four $5 bills, two of which were the "marked" bills that [Leonard] Jones had received earlier that night from the undercover police officer.
>
> As the group sat and watched television, defendant saw [Leonard] Jones smoking cocaine, but testified he saw no other drugs than that which [Leonard] Jones used. Shortly after his return from the convenience store, the police raided the apartment and arrested defendant, along with several others. [Slip op, p 2.]

Presumably, if the jury had believed defendant's testimony, it would have exonerated him. How-

ever, other evidence was presented at the trial
which raised serious doubts, to say the least, about
the defendant's credibility and his version of the
facts. For example, after testifying that the pur-
pose of his trip to Saginaw on March 9, 1987, was
to visit Sharon Jones, he later admitted that he
spoke with her for only five minutes.

Similarly, at one point in his testimony, defen-
dant claimed that he arrived in Saginaw at
6:00 P.M., but that he did not meet his Detroit
associates at the Sixth Street apartment until
8:00 P.M. He also claimed that after he met his
Detroit associates at the apartment, he stayed for
only a few minutes, then left to visit another friend.
He testified that he did not return to the apart-
ment until approximately 10:00 P.M., and that he
did not receive the marked $5 bills from Rogers
until that time. In contrast, Rogers testified that
defendant Wolfe met him and the other men at the
apartment at 6:00 or 6:15 P.M., and that Wolfe
stayed as long as two hours.[7] Rogers also testified
that Leonard Jones gave defendant the marked $5
bills before defendant left the Sixth Street apart-
ment to visit his other friend. Rogers' testimony
provided evidence that allowed the jury to infer that

---

[7] Rogers testified as follows:

*Q.* He [Wolfe] testified that it was about 8:00 o'clock when he
saw you. Is he correct?
*A.* I don't really know what—really what time it was, but
when we got there, it was about 6:00 and when we seen him
standing outside.

*      *      *

*Q.* And how long after he [Wolfe] came back up did he stay
upstairs with you?
*A.* A good little while.
*Q.* How long is a "good little while"?
*A.* I'd say an hour, two hours.

Wolfe was at the apartment for most of the evening, and that he was there when the sale of crack cocaine was made to the officer.

Further, there was evidence that contradicted defendant's claim that when the officers arrived to search the apartment he was there just drinking beer and watching television with friends. The testimony of the police officers was that the television set was broken, and that the condition of the apartment was, at best, ill-suited for an evening of socializing with friends. The apartment had no running water and no toilet facilities.

Finally, there was evidence that contradicted Wolfe's insistence that a key found in his possession did not fit the lock on the back door of the second floor apartment. Wolfe testified that the key was for the door to his mother's residence in Detroit. However, one of the officers testified that he tested the key in the lock of the back door of the Sixth Street apartment and that the key fit that lock.

Because the jury, unlike the Court of Appeals, had the opportunity to observe the demeanor of the witnesses in assessing their credibility, certainly it was not irrational for the jury to reject Wolfe's version of the facts in favor of the evidence offered by Rogers and the police officers. Nevertheless, because doubt about credibility is not a substitute for evidence of guilt, we move now to a review of the evidence related to the fourth and critical element of the crime. As noted above, this element, knowing possession with intent to deliver, has two components, (1) possession and (2) intent. See CJI2d 12.3. We shall consider separately the evidence adduced in support of each of these components.

A

A person need not have actual physical posses-

sion of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. *People v Harper,* 365 Mich 494, 506-507; 113 NW2d 808 (1962), cert den 371 US 930 (1962); see also *People v Mumford,* 60 Mich App 279, 282-283; 230 NW2d 395 (1975). Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. *Id.* See also *People v Germaine,* 234 Mich 623, 627; 208 NW 705 (1926). Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance. *Id.* See also *People v Williams,* 188 Mich App 54, 57; 469 NW2d 4 (1991).

In this case, there was no direct evidence that defendant Wolfe actually possessed the cocaine. Rather, the evidence produced at trial showed that he constructively possessed the cocaine, i.e., that he "had the right to exercise control of the cocaine and knew that it was present." *Germaine, supra* at 627; *Mumford, supra* at 282. The courts have frequently addressed the concept of constructive possession and the link between a defendant and narcotics that must be shown to establish constructive possession. It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. See, e.g., *Harper, supra* at 500; *People v Summers,* 68 Mich App 571, 581-582; 243 NW2d 689 (1976); *United States v Castillo,* 844 F2d 1379, 1392 (CA 9, 1988); *United States v Rackley,* 742 F2d 1266, 1271 (CA 11, 1984). Instead, some additional connection between the defendant and the contraband must be shown. *Castillo, supra,* 844 F2d 1392, citing *United States v Disla,* 805 F2d 1340 (CA 9, 1986).

Any one of various factors may be sufficient under given circumstances to establish this con-

nection. For example, constructive possession of cocaine was shown in *Rackley, supra,* where, in addition to the defendant's presence at the location where the cocaine was found, traces of cocaine were discovered on shirts stored in his pickup truck. 742 F2d 1272. In *Thompson v United States,* 567 A2d 907, 908-909 (DC App, 1989), constructive possession was shown where the defendant was found in a sparsely furnished apartment that contained cocaine packets and large sums of money lying about in plain view. In *United States v Perez-Paredes,* 678 F Supp 259, 263 (SD Fla, 1988), constructive possession of cocaine was established when the defendant drove a codefendant to a location where cocaine was being processed and then remained at that location despite the obvious and nauseating smell of ether, which is an integral component in the processing of cocaine. As these cases suggest, constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband. *Rackley,* 742 F2d 1272. The court in *Disla* explained:

> We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or "the ability to produce the drug . . . ," or that the defendant had the "exclusive control or dominion over property on which contraband narcotics are found . . . ." Constructive possession may also be proven by the defendant's participation in a "joint venture" to possess a controlled substance. The ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance. [805 F2d 1350 (citations

omitted). See also *Summers, supra,* 68 Mich App 584.]

In this case, at least three factors were shown that linked the defendant with the crack cocaine found at the Sixth Street apartment.

First, there was evidence that defendant Wolfe was in control of the premises where the drugs were found. Wolfe testified that he invited the other men to Saginaw and arranged to meet them at the Sixth Street apartment. He testified that the others who came from Detroit that day did not know where the apartment was located. Defendant Wolfe planned to show them where it was, and, as Rogers testified, he did show them. According to Rogers, he and the others were flagged down by Wolfe from the porch of the apartment when he saw them approaching from the street. Further, Wolfe was the only person found to have a key to the apartment. Surely, it was reasonable for the jury to infer that the evidence "demonstrated more than [Wolfe's] mere presence at the apartment as a casual invitee." *Castillo, supra,* 844 F2d 1393. Indeed, because testimony of the officers supported the conclusion that Wolfe had the only key to the apartment and was the only one of the men from Detroit who knew the precise location of the apartment, a rational jury could logically have inferred from all the circumstances that, among those found in the apartment, Wolfe was the one with control over the premises.

Second, Wolfe fled with the other men into a back bedroom when the police entered the apartment to search it. There was evidence that attempts were being made in that bedroom to conceal the crack cocaine. In *Williams, supra,* the Court of Appeals determined that sufficient evidence of possession was shown when "defendant

was discovered by police officers in an abandoned home, crouching over a can containing packets of cocaine in an apparent attempt to destroy them." 188 Mich App 57.

Third, there was substantial evidence that Wolfe was working with the other men in this crack-selling operation. Evidence was presented that a sale of similarly packaged cocaine had been made from the apartment earlier in the evening and that Wolfe was involved in that sale. The under-cover officer who purchased the crack heard other voices in the apartment at the time of the pur-chase. Rogers testified that he and Wolfe were at the apartment around the time of the sale.[8] Wolfe subsequently was found in possession of the two $5 bills that were used to purchase the cocaine. Fur-ther, Wolfe admitted that he knew there was crack cocaine in the apartment.[9] More signifi-cantly, Wolfe arranged the meeting in Saginaw at the apartment. Although he denied it, one of the officers testified that Wolfe was in possession of a beeper at the time of the search. It would be

---

[8] Rogers testified as follows:

*Q.* Okay. My question to you is: Between the first and the second time that you went to the store . . .
*A.* Uh-huh.
*Q.* . . . when you were upstairs with Mr. Wolfe, Leonard Jones and Anthony Winstead, did you see Detective Berg come into that address?
*A.* No.
*Q.* But the four of you were upstairs; is that correct?
*A.* Right.

[9] Wolfe testified as follows:

*Q.* Now we've heard a lot of testimony concerning crack cocaine in the premises. When you were there on 318 South Sixth Street, did you see any crack cocaine there?
*A.* I seen a little, but I didn't see a whole lot. Like that, that showed up in Court.

reasonable to infer that he carried the beeper to stay in contact with the other men who traveled together from Detroit and were shown to have the number of that beeper. In light of these facts, we cannot agree with the Court of Appeals that there was "no evidence linking defendant to the prior drug sale to the undercover officer," nor can we agree that the prosecution failed to provide "any connection" between defendant Wolfe and the cocaine found in the apartment. Because strong evidence was presented connecting Wolfe with the vacant apartment, the crack cocaine in the apartment, and the other men in the apartment (at least one of whom unquestionably sold cocaine from the apartment), a rational jury could have concluded that Wolfe knew the cocaine was present, and that he had the right to exercise control over it.

B

Just as proof of actual possession of narcotics is not necessary to prove possession, actual delivery of narcotics is not required to prove intent to deliver. Intent to deliver has been inferred from the quantity of narcotics in a defendant's possession, from the way in which those narcotics are packaged, and from other circumstances surrounding the arrest. See *United States v Montes-Cardenas*, 746 F2d 771, 779 (CA 11, 1984); *Mumford, supra*, 60 Mich App 283; *People v Delongchamps*, 103 Mich App 151, 160; 302 NW2d 626 (1981); *People v Gay*, 149 Mich App 468; 386 NW2d 556 (1986).

In this case, uncontradicted evidence was presented that cocaine was sold from the apartment. There was evidence that the recovered crack cocaine was packaged for sale in individual enve-

lopes. None of the evidence suggested that the cocaine was possessed simply for personal use. No glass pipes or other paraphernalia typically used to smoke cocaine were found. Rather, all of the evidence indicated that the cocaine was possessed with the intent of selling it.

Equally compelling evidence was presented that Wolfe was one of those who intended to sell the cocaine. Defendant Wolfe arranged the meeting at the apartment in Saginaw. Among those who came from Detroit, he was the only one who knew the precise location of the apartment. He was the only person found to have a key to the apartment. He was in possession of a beeper; Rogers had the number of that beeper. According to an expert who testified at trial, beepers are commonly used in the drug trade. Wolfe was found in possession of the two $5 bills that were used in the controlled cocaine purchase, as well as $255, mostly in bills of small denomination. Taken together, these pieces of evidence support much more than an inference that Wolfe simply was "at the wrong place at the wrong time." Indeed, Wolfe's possession of the marked money, coupled with his exclusive knowledge of the location of the vacant apartment and his possession of the only key to the apartment, suggest that Wolfe was a principal or primary figure in this cocaine selling operation. It is reasonable to infer that Wolfe was given the money from the controlled sale (and perhaps other drug sales) because he was in charge of this crack house in Saginaw. In short, viewed in a light most favorable to the prosecution, the evidence permits the inference that Wolfe arranged the March 9 meeting at this uninhabited and uninhabitable apartment with the intent to participate in the activity for which the apartment was ideally suited—the sale of crack cocaine.

Although the evidence of possession with intent to deliver in this case was circumstantial, we conclude that it is sufficient. Possession with intent to deliver can be established by circumstantial evidence and reasonable inferences arising from that evidence, just as it can be established by direct evidence. *Peterson v Oceana Circuit Judge,* 243 Mich 215, 217; 219 NW 934 (1928); *People v Maliskey,* 77 Mich App 444, 453; 258 NW2d 512 (1977). See also *Montes-Cardenas, supra,* 746 F2d 778; *Castillo, supra,* 844 F2d 1392; *State v Salas,* 231 Neb 471, 473-474; 436 NW2d 547 (1989); *State v Poellinger,* 153 Wis 2d 493, 503-504; 451 NW2d 752 (1990). Indeed, we agree with the Supreme Court of Wisconsin that "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *Id.* at 501-502. For this reason, inferences drawn from circumstantial evidence are reviewed in the same manner as those drawn from direct evidence.

On the basis of our review of the evidence, we conclude that the jury could have rationally concluded that Wolfe's guilt of possession with intent to deliver less than fifty grams of cocaine had been proven beyond a reasonable doubt.[10]

[10] In this appeal, the prosecution argues that the Court of Appeals imposed an improper burden on the people by applying the standard articulated in *People v Davenport,* 39 Mich App 252, 256; 197 NW2d 521 (1972) (requiring the prosecution to negate all reasonable theories consistent with innocence where the evidence is circumstantial). Cf. *People v Edgar,* 75 Mich App 467, 473; 255 NW2d 648 (1977); *People v Daniels,* 163 Mich App 703, 707; 415 NW2d 282 (1987); *People v Corbett,* 97 Mich App 438, 445; 296 NW2d 64 (1980); *People v Carson,* 189 Mich App 268, 269; 471 NW2d 655 (1991). Although the Court cited *Davenport,* we do not read its opinion as holding that the prosecution must negate all reasonable theories of innocence. Instead, the Court's decision appears to be based upon a finding that the prosecution failed to provide *any* evidence of defendant's guilt. For example, the panel stated:

There is *no evidence* linking defendant to the prior drug sale to the undercover officer, or that he had given any type of

IV

Because it reversed defendant's conviction for possession of cocaine with intent to deliver, the Court of Appeals found it unnecessary to consider the sufficiency of the evidence supporting the felony-firearm charge. While we disagree with the Court of Appeals concerning the cocaine possession conviction, we agree that the felony-firearm conviction cannot stand.

The police officers found a shotgun on the living room floor of the apartment. Except for the presence of defendant Wolfe in the apartment, there was no evidence that he had any role in obtaining the gun or in making it available during commission of the underlying felony. Unlike Rogers, Wolfe did not have a shell in his pocket that could be used in the shotgun. Likewise, there was no evidence that Wolfe attempted to use the gun, or even to reach for it, when the police entered the apartment. We conclude that Wolfe's presence in the apartment alone is insufficient proof of possession of a firearm during the commission of a felony.

V

For the reasons stated, we affirm the decision of the Court of Appeals with respect to the felony-firearm charge; we reverse the decision of that

assistance, support, encouragement to *anyone* regarding the possession or delivery of the cocaine. [Slip op, p 3. Emphasis added.]

As our review of the evidence indicates, we disagree with the Court of Appeals and conclude that, viewing the evidence in a light most favorable to the prosecution, sufficient evidence, albeit circumstantial, was presented that would permit a rational trier of fact to conclude that defendant's guilt was proven beyond a reasonable doubt. Under these circumstances and because the issue is not properly raised, we see no need to consider the so-called *Davenport* standard in this opinion.

Court with respect to the charge of possession of less than 50 grams of cocaine with intent to deliver; and we remand to that Court for its consideration of an issue preserved by defendant but not addressed by the Court of Appeals: whether the trial court abused its discretion in refusing to give an instruction on a lesser misdemeanor offense.

CAVANAGH, C.J., and LEVIN, BRICKLEY, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

BOYLE, J. (concurring in part and dissenting in part). This case presents the Court with the opportunity to clarify the standard for sufficient evidence and its application to convictions of possession with intent to deliver less than fifty grams of cocaine and possession of a firearm during the commission of a felony. The jury relied on circumstantial evidence to convict the defendant without specifying whether liability was direct or based on the prosecutor's aiding and abetting theory. I agree with the majority that, while the Court of Appeals articulated the proper test, it did not properly apply it.

The conclusion of the Court of Appeals is explicable either by a mistaken application of the *Hampton* standard,[1] or under a theory that because the evidence was circumstantial, the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt. The standard for appellate review of convictions based on circumstantial evidence has been a persistent source of confusion and conflict for decades.[2] Because the failure of the

---

[1] *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

[2] Compare, e.g., *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), *People v Simpson,* 104 Mich App 731; 305 NW2d 249 (1980), and *People v Lewis,* 178 Mich App 464; 444 NW2d 194 (1989),

majority to deal fully with the issue presents the
potential for further confusion, I write briefly to
elaborate upon that issue, and to state that the
felony-firearm question should be remanded to the

with *People v Mumford,* 60 Mich App 279; 230 NW2d 395 (1975),
*People v Edgar,* 75 Mich App 467; 255 NW2d 648 (1977), and *People v
Carson,* 189 Mich App 268; 471 NW2d 655 (1991). See also *People v
Hellenthal,* 186 Mich App 484; 465 NW2d 329 (1990) (the Court held
that it is permissible to infer that the defendant was in possession of
cocaine and marijuana from the presence of drugs in the defendant's
house, a urinalysis test showing a positive result for marijuana, and
the defendant's concession that he was aware of drug paraphernalia
in his house); *People v Spann,* 3 Mich App 444; 142 NW2d 887 (1966)
(the Court concluded there was insufficient evidence to sustain a
conviction for conspiracy and larceny despite evidence that the defen-
dant, Adams, was in the room from which the property was stolen
when he did not work there, was seen marking the property with
chalk when the store did not use such a marking system, and was in
possession of a car parked near the loading dock at the time the theft
occurred); *People v Casper,* 25 Mich App 1; 180 NW2d 906 (1970)
(after acknowledging that mere presence at the scene of a crime is
insufficient evidence, the Court concluded that the defendant's close
friendship with a codefendant, his presence at the scene, his prior
possession of the murder weapon, his lack of funds as a possible
motive, and the finding that he wiped the weapon clean of finger-
prints and tried to get rid of it, was sufficient to sustain a conviction);
*People v Valot,* 33 Mich App 49; 189 NW2d 873 (1971) (the Court
affirmed a conviction for possession where the defendant was found in
a room with a strong marijuana odor, hand-rolled marijuana ciga-
rettes, a brass water pipe on the table next to the bed occupied by the
defendant, and two marijuana cigarette butts on the floor, one next to
the defendant's bed); *People v Cardenas,* 21 Mich App 636; 176 NW2d
447 (1970) (the Court affirmed a conviction for possession where
marijuana was found on the floor of the defendant's car in an area
toward which the defendant was seen to bend down); *People v Iaconis,*
29 Mich App 443; 185 NW2d 609 (1971), aff'd *People v Bercheny,* 387
Mich 431; 196 NW2d 767 (1972) (the Court affirmed a conviction for
conspiracy on the basis of circumstantial evidence where the police
seized drugs and discovered the defendants in proximity after surveil-
lance that had revealed the defendants and others frequently arriving
at the premises, staying a short time, employing a ritual to obtain
admittance, and leaving the premises in what appeared to be a
narcotic stupor); *People v Davenport, supra* (the Court reversed a
conviction for possession on the basis that the evidence regarding
possession was circumstantial and the inferences were not sufficiently
compelling where the defendant resided in the house where the drugs
were found, the bag in which the drugs were located also included a
bottle with the defendant's name on it, and a detective testified that
he saw the defendant tossing objects into a toilet when he arrived and
later retrieved from the toilet three envelopes and loose marijuana).

Court of Appeals for resolution in light of the appropriate standard of review.

I

The defendant argues that the Court of Appeals properly applied the sufficiency of evidence rule to reverse his conviction. He emphasizes that the Court of Appeals articulated the proper standard, *People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979). Despite the Court of Appeals citation of *People v Davenport*, 39 Mich App 252; 197 NW2d 521 (1972), defendant contends that the Court did not rely on *Davenport* for the proposition that the prosecution must disprove all reasonable theories of innocence. Thus, he urges this Court to avoid discussion of the conflicting lines of authority regarding the prosecutor's burden in a circumstantial evidence case.

The defendant instead seeks to frame the issue as whether the evidence was sufficient to sustain a conviction under *Hampton.* Stressing that presence alone does not establish criminality, the defendant relies on *People v Burrel*, 253 Mich 321; 235 NW 170 (1931), and *People v Lewis,* 178 Mich App 464; 444 NW2d 194 (1989), to support the argument that more than mere association with an item must be shown to establish possession and that circumstantial evidence in this case is lacking because it shows only that "Wolfe *may* have had a connection to the *previous sale* of cocaine." (Emphasis in original.) Emphasizing that the evidence linked Wolfe to the domicile, not to the drugs that were seized, and that others were present and had access to the drugs, the defendant contends that the circumstantial evidence presented is insufficient. Explicit in this argument and the Court of Appeals analysis is the standard of appellate review of a sufficiency claim in respect to a convic-

tion based on circumstantial evidence. Implicit in the argument is the notion that, unless the prosecutor negates theories of innocence, that is, proves that no one else possessed the drugs to the exclusion of the defendant, the jury is not entitled to infer possession with intent to deliver from the facts presented.[3]

Thus, the significance of this case is not whether *Davenport* is expressly referenced for the disputed proposition, but, rather, the appropriate standard of appellate review of the sufficiency of the evidence in criminal convictions. As explained in 2 Wright, Federal Practice & Procedure: Criminal (2d ed), § 467, p 655, the standard to be applied by a trial court in deciding a motion for judgment of acquittal is the same standard that an appellate court should apply when reviewing the matter. The theory that there is a special rule applicable to cases based on circumstantial evidence that requires the exclusion of every hypothesis except that of guilt, *id.* at 655-662, has been rejected by the United States Supreme Court, *Holland v United States,* 348 US 121, 140; 75 S Ct 127; 99 L Ed 157 (1954), by this Court, *People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972), and by virtually every federal circuit court. "It is now understood that a single test applies, regardless of the kind of evidence . . . ." Wright, *supra* at 662-663.

The majority properly emphasizes that, "when determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a rea-

_____
[3] The defendant explicitly contends in the brief filed with this Court that the "prosecution has the fair burden of negating reasonable theories advanced at trial" and defines reasonable theories as those "supported with a modicum of evidence."

sonable doubt."[4] Griffin, J., *ante,* p 515. This standard underscores the critical differences between the functions of the trier of fact and the reviewing court. The trier of fact must be sure of every element of the crime beyond a reasonable doubt. Thus, the jury must be persuaded that the evidence it believes and upon which it relies is sufficiently strong to exclude a doubt based on reason regarding the defendant's innocence. In *State v Poellinger,* 153 Wis 2d 493, 504-506; 451 NW2d 752 (1990), the Wisconsin Supreme Court identified the importance of the distinction between trial and appellate functions in the context of appellate challenges to convictions based on circumstantial evidence, stating:

> [T]his court has often failed to maintain the appropriate distinction between the applicability of the hypothesis of innocence rule at the trial court level and the applicability of the reasonable doubt standard of review on appeal. We have recognized that the elimination of hypothesis of innocence is the process by which the trier of fact reaches a determination of guilt beyond a reasonable doubt, and we have mistakenly stated that a conviction based on circumstantial evidence may be sustained on appeal or review if the evidence is sufficiently strong to exclude every reasonable theory of innocence.
>
> *  *  *
>
> The defendant is, in essence, asking this court to sit as a judge or jury making findings of fact and to apply the hypothesis of innocence rule *de novo* to the evidence presented at her trial to determine if, in our view, the hypothesis that she did not know that she possessed cocaine is sufficiently

---

[4] To repeat and emphasize that the issue presented on appellate review of claims of insufficiency is distinct from the role of the factfinder, it must be observed that the question of appropriate instruction of a jury where the evidence is wholly circumstantial is not implicated in this appeal.

reasonable to warrant reversal of her conviction. It is not the role of an appellate court to do that. To the extent that prior decisions of this court have suggested that the hypothesis of innocence rule is in any way applicable in reviewing the sufficiency of the evidence to support a conviction, we . . . take the opportunity presented in this case to clearly state that it is not.

The Ohio Supreme Court aptly observed that the rule that the prosecutor must disprove reasonable innocence theories turns the "standard on its head." *State v Jenks,* 61 Ohio St 3d 259, 267; 574 NE2d 492 (1991). Similarly, although defendant's argument has been presented with exceptional skill, it mistakenly suggests that the negation of reasonable theories consistent with innocence is the standard of appellate review. The result of adopting this suggestion would be to permit the reviewing court to ask whether any reasonable juror could have found the defendant innocent, not, as required under *Hampton,* whether any reasonable juror could have found the defendant guilty. As this Court explained in *People v Fuller,* 395 Mich 451, 455; 236 NW2d 58 (1975),

> It is for the trier of fact to determine if the prosecution has "negate[d] every reasonable theory consistent with the defendant's innocence of the crime charged."

A

At the appellate level, all reasonable inferences must be drawn in favor of the prosecution, and then, if any reasonable juror could have found guilt beyond a reasonable doubt, the verdict must be upheld. A major focus of the defendant's argument in the Court of Appeals and this Court was

that there was insufficient evidence connecting him to the cocaine and the weapon. Relying on *People v Millard,* 53 Mich 63, 70; 18 NW 562 (1884), the defendant asserted that the prosecution's "case was not only circumstantial and weak, it was too weak to overcome the reasonable theory of innocence Mr. Wolfe presented throughout the trial." The defendant suggests that "even if the Court of Appeals in this case did implicitly apply the circumstantial evidence rule, it was not error to do so." The defendant's argument, the Court of Appeals focus on the circumstantial nature of the evidence, and the panel's conclusion that the evidence demonstrates, "at best, that defendant was at the wrong place at the wrong time," all evidence an approach that transmits the reviewing court into a thirteenth juror weighing inferences against the prosecution. Unpublished opinion per curiam of the Court of Appeals, decided December 19, 1990 (Docket No. 113403). As Chief Judge Julian Cook observed in rejecting a similar circumstantial evidence claim in *United States v Turner,* 490 F Supp 583, 590 (ED Mich, 1979):

> It would be improper to . . . hold that when *any* inference of innocence (arising out of circumstantial evidence) exists, the Court must acquit. . . . To hold otherwise would be to return to the old and rejected "only hypothesis" rule. [Emphasis in the original.]

Several Court of Appeals opinions[5] have misread

---

[5] See *People v Johnson,* 4 Mich App 205, 207; 144 NW2d 646 (1966) (the Court relied on *Millard* for the proposition that the measure of guilt beyond a reasonable doubt is whether the reviewing court "find[s] evidence in the record which supports a conclusion that negatives every reasonable theory consistent with the defendant's innocence"); *People v Morrow,* 21 Mich App 603; 175 NW2d 523 (1970) (the Court relied on *Johnson* to reject the inference that the defendant's unexplained presence at the scene sufficed to sustain a conviction for larceny).

the holding of *People v Millard, supra,* and applied it to the issue of sufficiency of the evidence of a crime where more than one person might be participating.[6] In *People v Spann,* 3 Mich App 444, 454; 142 NW2d 887 (1966), the Court extended the *Millard* rule to reverse a conviction where the "prosecution failed to present a theory of the case and proof that excluded all possible theories of innocence explaining [the defendant's] conduct."

Other authority has extended the rationale of *People v Burrel, supra,* to expand the standard of appellate review. The defendant in *Burrel* was convicted for aiding and abetting the statutory rape of a young woman by a codefendant. The defendant drove his car and, at the direction of the codefendant, picked up a young girl who got into the back seat with the codefendant where they had consensual intercourse. There was no evidence that the defendant was aware that the girl was underage or knew that the codefendant intended statutory rape. The *Burrel* Court reversed the defendant's conviction on the basis that mere presence is not enough to make a person an aider or abettor. Thus, no inference of the defendant's

---

[6] *Millard* involved the prosecution of a husband for the death of his wife, allegedly by poisoning, although the evidence regarding death by poisoning was ambiguous. In concluding that a series of rulings led to error in the jury instructions regarding the burden of proof, the *Millard* Court applied the rule that the prosecutor must prove the corpus delicti before introducing evidence directed at demonstrating that the defendant was the perpetrator. Thus, *Millard* involved a review of jury instructions, not the sufficiency of evidence. Furthermore, the *Millard* Court focused on the corpus delicti rule that where "independent evidence was as consistent with death from natural causes as from poison," a conviction cannot be sustained. Perkins, Criminal Law (3d ed), p 147. This Court more recently explained that the corpus delicti of a crime means "the essential wrong" and does not require independent proof of every essential element of the crime charged. *People v Williams,* 422 Mich 381, 392; 373 NW2d 567 (1985). Rather, we embraced the approach taken by Wigmore, that the corpus delicti includes two elements, the fact of the specific loss and someone's criminality. 7 Wigmore, Evidence (Chadbourn rev), § 2072, pp 524-526.

criminality could logically be drawn from the facts of *Burrel.* The holding does not authorize reviewing courts to thwart the factfinder from drawing permissible inferences from a defendant's presence at the scene of a crime or at the scene of contraband.[7]

The rule that mere presence is not enough to conclude that a defendant is guilty does not mean that a jury may not draw any inference regarding possession or intent to deliver from the defendant's presence in compromising circumstances.

B

When applied to a circumstantial evidence case for possession of, or possession with intent to deliver, drugs, and involving more than one potential defendant, an expansive interpretation of the authority of the reviewing court produces the anomalous consequence that each defendant must be acquitted because all might be guilty. Thus, the Court of Appeals here concluded that the evidence merely shows that defendant was one of many who had access to the apartment from which cocaine was sold.

In viewing evidence that could support conflicting inferences, the trier of fact is free to "believe, or disbelieve, in whole or in part, any of the evidence presented." *Fuller, supra* at 453. The trier of fact can choose among rational inferences from evidence presented and reject an inference consistent with acquittal. Thus, when a reviewing court is presented with a record of historical facts

---

[7] Other panels have applied the same rationale without citing *Burrel.* See, e.g., *People v Lewis, supra* (the Court reversed a conviction because it concluded that the "most" that the evidence showed was that the defendant was not the only person who had access to the inside of a house where drugs were sold); *People v Simpson,* n 2 *supra* at 733-734.

that could support more than one inference, an appellate court is obligated to accept the inference drawn by the trier of fact and defer to that resolution as long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979).[8]

The appellate court is not authorized to substitute its judgment for that of the factfinder when additional evidence beyond mere presence has been presented.[9] For purposes of appellate review, " 'mere proximity to illegal drugs, mere presence on the property where they are located or mere association with persons who do control them, without more, is insufficient to support a finding of possession.' " However, " 'such proximity, presence, or association is sufficient when accompanied . . . with testimony connecting the defendant with the incriminating surrounding circumstances.' " *United States v Rogers,* 921 F2d 1089, 1093 (CA 10, 1990). In other words, while mere presence cannot result in a conviction, the fact that the prosecution need not disprove all reasonable innocence theories means that the prosecution need not affirmatively prove that no individual other than the defendant had access to the contraband for the conviction to survive appellate challenge. When an appellate court independently reviews the evidence, it asks whether a

[8] See *Poellinger, supra* at 505-507.

[9] See, e.g., *People v Fuller, supra* at 454 (the defendant's activities "were consonant with a theory of active participation" in the crime as a lookout); *People v Dockery,* 20 Mich App 201, 206, n 1; 173 NW2d 726 (1969) (where the defendant knowingly took advantage of the fear induced in the rape victim by two codefendants who had raped her first his "participation goes far beyond . . . mere presence"); *People v Valot,* n 2 *supra* (the Court held that the defendant's control of the drugs was reasonably inferred from the fact that he registered for the room, paid the rent, was arrested in the room where the odor of marijuana was strong, and marijuana was found in proximity to the defendant's bed in which he was sleeping).

reasonable juror could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Hampton, supra.*

II

Because it concluded that the underlying felony required reversal, the Court of Appeals did not address the felony-firearm count except to note that the evidence was "tenuous." Slip op, p 3, n 1. The parties here have focused largely on the underlying felony and issues surrounding that count. Rather than decide the issue without the benefit of a full record, I would remand the case to the Court of Appeals for its consideration of that issue. In doing so, I would observe, however, that the evidence shows more than mere presence. The jury could have found that defendant had the exclusive means of access to the apartment and, given the compactness of the apartment and the visibility of the weapon, might have concluded that he had constructive possession of the weapon as well as the cocaine. See *United States v LaGuardia,* 774 F2d 317 (CA 8, 1985); *United States v Curry,* 911 F2d 72 (CA 8, 1990).

Thus, I concur in the majority's reversal of the decision of the Court of Appeals and reinstatement of the defendant's conviction with respect to the first count, possession with intent to deliver. I respectfully, but strenuously disagree with the majority's decision to opine with respect to the second issue, and would remand this question to the Court of Appeals.