*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellee,

v

No. 343531
Wayne Circuit Court
LC No. 17-010441-01-FH

HANNIBAL RAMON CLEMONS,

Defendant-Appellant.

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession with intent to distribute 50 grams or more but less than 450 grams of cocaine, MC333.7401(2)(a)(*iii*), possession with intent to deliver oxycodone, MCL 333.7402(2)(b), and possession of marijuana, MCL 333.7403(2)(d).[1] Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 6 to 20 years' imprisonment for the possession with intent to distribute cocaine conviction, two to five years' imprisonment for the possession with intent to distribute oxycodone conviction, and 99 days in jail, with time served, for the possession of marijuana conviction. We affirm.

## I. BACKGROUND

Detroit Police Officer Bashawn Gains ("Officer Gains") assisted in executing a search warrant at a house located on Suzanne Street in Detroit on July 25, 2017. The officers detained a number of people in the house, although defendant was not present at the time. Officer Gains searched the southwest bedroom and found a jar containing .2590 grams of marijuana on top of a dresser. Inside the top drawer of that dresser, Officer Gains found six sandwich bags containing a combined 52.44 grams of cocaine, an amount of suspected heroin, and three containers with a total of 172 oxycodone pills. In the same drawer, Officer Gains also found a photograph of

---

[1] In his supplemental brief, defendant inaccurately states that he was convicted of possession with intent to deliver marijuana, MCL 333.7401(2)(e).

defendant, four documents addressed to defendant at the Suzanne house, and one document addressed to defendant at an address in Warren, Michigan. The documents addressed to defendant at the Suzanne house included a Michigan vehicle registration, a bail bond agreement, a letter from a municipal court of Miami, Ohio, and a medical marijuana patient-approval letter from the Michigan Department of Licensing and Regulatory Affairs. The document addressed to defendant at Warren was a summons from the County Sheriff's Office in Miami, Ohio. Additionally, Detroit Police Officer Michael Mosley also found three guns under a mattress in the bedroom with the narcotics, and Officer Gains found a gun in the bedroom across the hall.

At trial, the prosecution argued that defendant constructively possessed the narcotics because the documents listed defendant's address as the Suzanne street address and the documents were found in the same drawer as the narcotics. Defendant attempted to present one witness, Tremaine Riley ("Riley"). The trial court interrupted Riley's testimony and recommended that Riley first speak with his own counsel before offering potentially self-incriminating testimony. Following a recess, Riley appeared with counsel and declined to testify, asserting his Fifth Amendment privilege. The trial court found defendant guilty of the charges noted above. It found defendant not guilty of several firearms charges, and it granted defendant's motion for directed verdict regarding an additional drug charge.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to prove that defendant constructively possessed the narcotics. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a bench trial de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trial court could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *People v Lanzo Constr Co*, 272 Mich App 470, 473-474; 726 NW2d 746 (2006).

The elements of possession with intent to deliver 50 grams or more but less than 450 grams of cocaine are: "(1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed between 50 and [450] grams." MCL 333.7401(2)(a)(*iii*); *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). The elements of possession with intent to deliver oxycodone are: (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; and (3) the substance possessed was oxycodone and the defendant knew it was oxycodone. MCL 333.7402(2)(b); *People v Johnson*, 466 Mich 491, 499-500; 647 NW2d 480 (2002) (stating the elements of possession with intent to deliver cocaine). The elements of possession with intent to deliver a controlled substance encompass the elements of simple possession of a controlled substance. *People v Robar*, 321 Mich App 106, 131; 910 NW2d 328 (2017). Thus, the elements of simple possession of marijuana require "(1) that a defendant possessed a controlled substance, (2) that the defendant knew he or she possessed the controlled substance, and (3) the amount of the controlled substance, if applicable. MCL 333.7403(2)(d); *Robar*, 321 Mich App at 131.

Defendant only argues that there was insufficient evidence that defendant possessed the cocaine, oxycodone, and marijuana. "A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive." *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "Constructive possession exists if the defendant knew that the substance was present and had the right to exercise control over it." *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005). Stated differently, "constructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Wolfe*, 440 Mich at 521. "[C]ircumstantial evidence and the reasonable inferences that arise from it can constitute sufficient proof of the elements of a crime beyond a reasonable doubt." *Williams*, 268 Mich App at 421.

In this case, the marijuana was found on top of a dresser, and the cocaine and oxycodone was found in the top drawer of that dresser. Also inside the drawer were a number of defendant's documents and a photograph of the defendant. Among the documents were a Michigan vehicle registration, two complaints and an assignment notice from the municipal court in Miami County, Ohio, a court summons from the Miami County Sheriff's Office, a vehicle title, and an approval of defendant's medical marijuana application. The court summons, issued January 12, 2017, listed defendant's current address as an address in Warren, Michigan. The other, more recent, documents listed defendant's address as the address on Suzanne Street where the narcotics were found. The assignment notice and medical marijuana approval letters had mailing dates of February 24, 2017, and May 19, 2017, respectively, and the vehicle title's issuance date was April 24, 2017. As noted, the raid was executed on July 25, 2017.

Viewed in the light most favorable to the prosecution, the prosecution presented sufficient circumstantial evidence that defendant constructively possessed the narcotics. The multitude of documents addressed to defendant at the Suzanne residence indicate that defendant resided at the house. The single, older document addressed to defendant at the Warren residence does not seriously undermine the inference that defendant resided on Suzanne. The documents were in the same dresser drawer as the cocaine and oxycodone, and the marijuana was on top of the dresser, implying common ownership and control. Accordingly, the trial court reasonably inferred that defendant had control over the narcotics on and in the dresser. See *People v McGhee*, 268 Mich App 600, 623; 709 NW2d 595 (2005) (determining that documents listing the same address as the location of a drug raid "indicated [the] defendant's ownership and control of the location at which the drugs were found at the time when they were found."); *People v Richardson*, 139 Mich App 622, 625-626; 362 NW2d 853 (1984) (determining that the presence of the defendant's personal papers in the same drawer as cocaine was sufficient evidence that the defendant constructively possessed the cocaine). Because the trial court reasonably inferred that defendant had control over the narcotics, there was sufficient circumstantial evidence that defendant constructively possessed the cocaine, oxycodone, and marijuana.

Defendant also argues that there was insufficient evidence that he constructively possessed the narcotics. Specifically, he argues that he was not present for the police raid at the Suzanne house, and the presence of numerous other people during the raid diminishes the inference that defendant was connected to the narcotics found in the dresser. We disagree. Although a person's presence, by itself, at a location where drugs are found is not sufficient to

show possession, *Wolfe*, 440 Mich at 521, defendant's absence from the location where drugs are found is not dispositive of defendant's lack of possession of drugs. Instead, the prosecution need only establish "a sufficient nexus between the defendant and the contraband." *Id*. Additionally, the fact that there were additional people at the house, who were not in the bedroom where the narcotics were located, when it was raided does not affect defendant's control and possession of the narcotics. "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation marks and citation omitted). There was no evidence that any of the other people had control over the cocaine, oxycodone, or marijuana. Therefore, it was reasonable for the trial court to infer that defendant had sole possession of the drugs, and there was sufficient evidence to sustain defendant's convictions.

## III. ABILITY TO PRESENT A DEFENSE

Defendant argues that the trial court's comment to the defense witness was improper and denied defendant the ability to present a defense. We disagree.

To preserve the issue of whether the trial court's comments to defendant's witness intimidated the witness into not testifying, the issue must have been raised, addressed, and decided in the lower court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not raise the issue that the trial court intimidated the witness until his appeal. Therefore, the issue is unpreserved.

Generally, "[w]hether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). However, "unpreserved constitutional claims are reviewed for plain error affecting substantial rights." *People v Gaines*, 306 Mich App 289, 297; 856 NW2d 222 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Reversal is only warranted if the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity, or public reputation" of the judicial proceedings. *Id*. at 763-764.

Both the United States and the Michigan Constitutions guarantee the right to due process of law, and the right to present a defense is a fundamental right of due process. *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), citing US Const, Ams VI and XIV; Const 1963, art 1, §§ 13, 17, and 20; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984); *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016).

Defendant argues that the trial court deprived defendant of the right to present a defense when the trial court threatened defendant's sole witness, Riley, with a potential criminal charge, which resulted in Riley not testifying. A trial court is not permitted to admonish a witness in such a way that drives the witness from the stand, thereby depriving a defendant of his due

process rights. *Webb v Texas*, 409 US 95, 98; 93 S Ct 351; 34 L Ed 2d 330 (1972). In *Webb*, the trial court admonished the single defense witness that if the witness lied, the trial court would " 'personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood (sic) is that you would get convicted of perjury . . . .' " *Id*. at 96. The trial court's "lengthy admonition" regarding the witness's expected perjury, in addition to the power disparity between the judge and the witness, "exerted such duress on the witness'[s] mind as to preclude him from making a free and voluntary choice whether or not to testify," which drove the witness from the stand and deprived the defendant of due process of law. *Id*. at 97-98. "However, where the extraordinary circumstances on which the *Webb* decision was based were not present, warnings to potential defense witnesses concerning self-incrimination or possible perjury charges have been held to be proper." *People v Robbins*, 131 Mich App 429, 439; 346 NW2d 333 (1984).

In this case, the trial court stopped Riley from testifying and stated:

Mr. Riley, we're going to have you keep that seat for just a minute. I think it is in your best interest to speak with an attorney about your testimony before you testify. For the record, we did have a side bar discussion. There has been testimony that this is a drug house, for lack of a better term, and the witness is [sic] just testified it's only him and one other person that own this house. And I think the issue here is whose [sic] in possession of these narcotics. So I think it's in your best interest, Mr. Riley, to speak with an attorney before we proceed. After speaking with the attorney if you want to proceed and testify, we'll do that. Okay.

Once Riley spoke with an attorney, Riley made the decision to invoke his Fifth Amendment right to not testify. Unlike the circumstances in *Webb*, the trial court did not threaten Riley with prosecution. Instead, the trial court advised Riley that it was in his best interests to speak with an attorney before continuing his testimony. The trial court did not suggest that Riley would necessarily regret testifying, nor did it suggest that Riley would necessarily decide that he should not testify. The record does not indicate that Riley's decision not to testify further was anything other than a free and voluntary decision. Instead, the record indicates that Riley declined to testify further after consultation about his legal rights with his counsel and not because of a direct threat or warning by the trial judge.

Furthermore, it is unlikely that Riley's decision to not testify "affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. The record indicates that defense counsel was preparing to elicit testimony from Riley to establish that defendant was not connected to the Suzanne house when the trial court stopped Riley's testimony. Defendant specifically contends that Riley's proposed testimony would have established that defendant "had no possessory interest in the house where the drugs were found." However, even if true, such testimony would not preclude a possessory interest in the dresser and the contents of the dresser. It is unlikely that Riley's testimony would have altered the trial court's ruling to convict defendant given the presence and circumstantial evidence of defendant's important documents and mail in the dresser drawer in the home, indicating that defendant resided at the Suzanne Street house and had control of the dresser. As stated above, the prosecution presented sufficient circumstantial evidence to prove beyond a reasonable doubt that defendant constructively possessed the

-5-

cocaine, oxycodone, and marijuana, irrespective of whether defendant had any ownership interest in the house itself.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause