# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LEE ARTHUR THOMPSON,

Defendant-Appellant.

UNPUBLISHED
April 7, 2016

No. 326012
Grand Traverse Circuit Court
LC No. 2014-011875-FC

Before: BOONSTRA, P.J., and WILDER and METER, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions, following a jury trial, of two counts of criminal sexual conduct in the first degree (CSC I), MCL 750.520b(1)(a), and two counts of criminal sexual conduct in the second degree (CSC II), MCL 750.520c(1)(a), in connection with acts of sexual abuse against two minors. Defendant was sentenced as a third offense habitual offender, MCL 769.11, to serve 30 to 50 years in prison for the CSC I convictions and 10 to 30 years in prison for the CSC II convictions. We affirm the convictions but remand for the limited purpose of amending the judgment of sentence to correct defendant's status by changing it to that of a second offense habitual offender and to correct defendant's maximum prison terms for the CSC II convictions.

Defendant argues (1) that evidence was insufficient for a rational jury to find him guilty beyond a reasonable doubt, (2) that improper other-acts evidence was introduced at trial, (3) that the prosecutor's questioning of one of the witnesses amounted to coaching and prosecutorial misconduct, and (4) that defense counsel was ineffective. We disagree. Defendant also argues that he was improperly sentenced as a third offense habitual offender and that his maximum sentences on the CSC II charges should be reduced accordingly. We agree.

Fifteen-year-old MP testified at trial that when he was five years old, he and his sister, AP, were sexually molested by defendant. Until recently, MP believed that his grandmother was his mother. Defendant was married to the grandmother's sister.

MP described the acts of sexual molestation as follows:

*Q*. And tell us what happened in the living room.

-1-

*A*. Well . . . he got me and my sister both naked. He started—he made me do—perform oral sex on him. And he was touching me down in my penis area.

And then he was touching my sister in the vaginal area.

MP testified that defendant ejaculated in his mouth. MP described a second incident when defendant tried to get MP and AP naked in the bathroom. MP stated, "Well, he was trying to get me and my sister naked. And he was getting naked too. As he was getting naked, I hit him in the genital area, in his penis. He laughed at me." MP indicated that defendant was not able to touch him or his sister on that occasion. MP stated that he told his grandmother about what had happened but she did not believe him.

AP, who was 14 years old at the time of trial, testified that defendant molested her when she was younger. AP stated that on more than five occasions defendant "would touch me and my brother inappropriately in ways that men shouldn't touch kids." AP stated, "He would take most likely my pants off. And he would touch me—I don't know what to call it, in my vaginal area." AP stated, "He made my brother suck his penis." AP indicated that she saw this happen and that it happened in the living room. AP stated that defendant also made her "put [her] mouth on his penis." AP indicated that defendant ejaculated in her mouth. AP testified that one day defendant hit her and told her not to tell because she would get in trouble. The prosecutor asked AP why she did not tell anyone and she stated, "Because I was little and he was convincing that I would be the one to get in trouble." When she was in fifth grade, AP told a friend what had happened and the friend encouraged her to tell an adult. AP told a counselor at school and the matter was later referred to the Child Advocacy Center and the police.

First, defendant raises a challenge to the sufficiency of evidence. A challenge to the sufficiency of evidence is reviewed de novo (i.e. without deference to any decisions made in the lower court). *People v Harverson*, 291 Mich App 171, 176; 804 NW2d 757 (2010). "The sufficient evidence requirement is a part of every criminal defendant's due process rights. It is an attempt to give 'concrete substance' to those rights, by precluding irrational jury verdicts." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992). In considering a challenge to the sufficiency of evidence, this court determines "whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Harverson*, 291 Mich App at 175. "[A] reviewing court must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *Wolfe*, 440 Mich at 513-514 (citation and quotation marks omitted). "Of course, appellate courts are not juries, and even when reviewing the sufficiency of the evidence they must not interfere with the jury's role." *Id*. at 514. An appellate court "must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact . . . ." *Id*. at 514-515 (citation and quotation marks omitted). "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *Id*. at 515 (citation and quotation marks omitted). "[F]actual conflicts are to be viewed in a light favorable to the prosecution." *Id*.

Both CSC I and CSC II are general intent crimes each containing two elements. For either crime, a defendant "is guilty of criminal sexual conduct"

where the defendant engages in sexual conduct and any of the several delineated "circumstances" exist. The principal difference between these two offenses is the type of evidence necessary to satisfy the sexual conduct element—CSC I requires that the defendant commit "sexual penetration," while CSC II requires "sexual contact." [*People v Nyx*, 479 Mich 112, 147; 734 NW2d 548, 568-569 (2007) (citations omitted).]

The aggravating circumstance in this case was that the victims were under the age of 13. MCL 750.520b(1)(a) & MCL 750.520c(1)(a).

MP and AP each described acts of fellatio defendant forced them to perform on him. For the purpose of CSC, sexual penetration "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(1)(r). Accordingly, if the jury found that defendant engaged in fellatio with each of these victims, it would be proper to find that he had engaged in "sexual penetration" and find him guilty of CSC 1.

MP and AP each testified that defendant touched their genitals with his hand. MCL 750.520a(1)(q) states, in pertinent part:

> "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification [or] done for a sexual purpose . . . .

Under the statute, " '[i]ntimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being." MCL 750.520a(1)(f). Under the circumstances described by the victims (i.e. that the touching accompanied an act of fellatio), the touching can reasonably be construed as being for the purpose of sexual arousal.

Defendant argues that the evidence was insufficient because there was no physical evidence linking defendant to the crime. This is true, but "[t]he testimony of a victim need not be corroborated" in a CSC case. MCL 750.520h. See also *People v Phelps*, 288 Mich App 123, 133; 791 NW2d 732 (2010) (victim's testimony that she did not give the defendant permission to engage in penile-vaginal intercourse was sufficient to convict defendant of CSC I). Accordingly, the lack of physical evidence goes only to the strength of the case against defendant; the evidence was not insufficient merely because it only consisted of the victims' testimony.

Defendant presented the testimony of defendant's former wife, who stated that defendant never babysat the children. This evidence is in conflict with the testimony of the victims. Factual conflicts are viewed in the light most favorable to the prosecution. *Wolfe*, 440 Mich at 515. Thus, this Court resolves that conflict in favor of the testimony of the victims. The jury saw and heard the testimony of both MP and AP and the testimony of the former wife. By finding the defendant guilty as charged, it is clear that the jury credited the victims' testimony. This factual determination is squarely within the province of the jury. *Id*. The jury was not

required to speculate; it had direct testimony from the victims that these acts of sexual contact and sexual penetration occurred. Accordingly, the evidence was constitutionally sufficient to find defendant guilty beyond a reasonable doubt and to convict him of CSC I and II.

Defendant next argues that the trial court improperly allowed 17-year-old EP, MP and AP's sister, to testify that the following occurred when she was younger:[1]

> One night I fell asleep on the couch . . . . And when I had woken up later that night, it was like 10:30ish. It was late. And I didn't have my nightgown anymore. And he was sitting underneath me, and his hand was by my underwear and the other one was underneath my, like, neck, head area.

On cross-examination EP testified that defendant did not put his hand in or on her underwear. EP's testimony did not form the basis of any charges in this case. Her testimony was admitted under MCL 768.27a, which provides:

> (1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.
>
> (2) As used in this section:
>
> (a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.
>
> (b) "Minor" means an individual less than 18 years of age.

As a threshold matter, defense counsel only challenged the admission of EP's testimony on the ground that he did not have an adequate opportunity to interview her. After interviewing her during a break at trial, defense counsel indicated that the only determination the court needed to make was whether good cause had been shown for a delay in disclosing that the evidence would be submitted. The defense did not challenge the admissibility of the substance of EP's testimony. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An unpreserved issue is

---

[1] A reasonable reading of the transcript is that the incident occurred when EP was eight years old or younger.

reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*Id*.]

Regardless, the trial court did not err in allowing EP to testify regarding her encounter with defendant.

The statute "allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558, 562 (2007). In other words, the statute creates an exception to the general rule against propensity evidence under MRE 404(a). See *People v Watkins*, 491 Mich 450, 471; 818 NW2d 296 (2012). The "more-probative-than-prejudicial" balancing test under MRE 403 still applies, but the propensity inference must be weighed in favor of admissibility, not against it. *Watkins*, 491, Mich at 487.

Both CSC I and II, as well as attempts to commit these offenses, are listed offenses under MCL 28.722 under the circumstances of this case. See 28.722(j) & (w)(*iv*), (*v*), & (*vii*). Defendant was on trial for CSC I and II. The conduct described by EP constitutes at least attempted CSC II. See MCL 750.520a(1)(q) (sexual contact "includes . . . the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts"). Therefore, MCL 768.27a applied.

Defendant argues that EP's testimony should have been excluded under MRE 403 as substantially more prejudicial than probative. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403 . . . ." *Waknin v Chamberlain*, 467 Mich 329, 334; 653 NW2d 176 (2002) (citations and quotation marks omitted). The rule's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect . . . ." *Id*. (citations and quotation marks omitted).

That defendant attempted to inappropriately touch EP on one occasion was highly probative on the issue of whether he sexually molested AP and MP. "[O]ur cases have never suggested that a defendant's criminal history and propensity for committing a particular type of crime is irrelevant to a similar charge. On the contrary, it is because of the human instinct to focus exclusively on the relevance of such evidence that the judiciary has traditionally limited its presentation to juries." *Pattison*, 276 Mich App at 620. Defendant was charged with sexually touching two young children. That another child in the household testified that defendant

touched her inappropriately was probative of defendant's propensity to sexually abuse young children.[2] Given the highly probative nature of the evidence, we reject defendant's argument.

Defendant also argues that MCL 768.27a implicates the constitutional prohibition against ex post facto laws. This issue has already been squarely decided by this Court in *Pattison*[3] and defendant's argument is without merit.

Defendant next argues that the prosecutor committed error requiring reversal of his convictions. The defense did not object or move to strike AP's statements regarding her age at the time of the sexual abuse by defendant on grounds that the testimony had been improperly influenced by the prosecutor. Therefore the present issue is unpreserved. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

Generally,

> [w]here issues of prosecutorial misconduct are preserved, we review them de novo to determine if the defendant was denied a fair and impartial trial. But defendant failed to object to the prosecutor's statements; therefore, we review his claims for plain error that affected his substantial rights. We will reverse only if we determine that, although defendant was actually innocent, the plain error caused him to be convicted, or if the error seriously affected the fairness,

---

[2] As the prosecution pointed out in its motion below, the evidence was also relevant to the credibility of the other victims. If EP had not testified, an inference could have been drawn that the alleged victims were either mistaken or had fabricated their testimony. A question could have arisen in the minds of the jurors regarding why defendant would abuse the other two children and leave EP completely alone. Accordingly, her testimony was relevant for this non-propensity purpose.

[3] Pattison states:

> When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b). In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context. However, the altered standard does not lower the quantum of proof or value of the evidence needed to convict a defendant. In this case, for example, defendant could have been tried and convicted before this statute was enacted solely on the basis of his daughter's proposed testimony. That same testimony, if presented as it appears in the record, remains legally sufficient to support his conviction at his upcoming trial. Therefore, the standard for obtaining a conviction against defendant has not changed, and the application of MCL 768.27a to this case does not violate the Ex Post Facto Clause. [*Pattison*, 276 Mich App at 618-619.]

integrity, or public reputation of judicial proceedings, regardless of his innocence. [*Thomas*, 260 Mich App at 453-454 (citations and quotation marks omitted).]

Defendant asserts that false memories were suggested to AP by the prosecutor. AP testified about events that happened to her as a young child. Her brother testified regarding similar events. AP testified that, initially, her independent memory of the events had been that they took place after she was five years old. However, she also indicated that the events did not occur after her father came home from prison, which apparently occurred before she was five years old. The implication is that the timing of her father's return and the date of the incidents was clarified for her during discussions with the prosecuting attorney. At most, AP's testimony was inconsistent about timing and revealed that, years later, she did not have a crystal clear memory of the timing of events, and the prosecutor was attempting to help her to clarify events. AP indicated that she remembered now that the events occurred before her father returned and before she was five. That the details were inconsistent went to the weight of the evidence and the credibility of the witness. This Court will not interfere with the role of the trier of fact in determining " 'the weight of the evidence or the credibility of witnesses.' " *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012), quoting *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Under all the circumstances, we find no plain error.

Defendant next argues that his trial counsel was ineffective for failing to call an expert witness in child psychology. To preserve an issue of ineffective assistance, a defendant must either raise the issue in a motion for a new trial or move for a *Ginther*[4] hearing. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Here, defendant did neither, so the claim is unpreserved. Review of unpreserved claims of ineffective assistance is limited to "mistakes apparent on the record." *Id.* "[T]his Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).

Under both the United States Constitution and the Michigan Constitution, a criminal defendant has a right to the effective assistance of counsel at trial. US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To succeed on a claim that trial counsel was constitutionally ineffective, a defendant must show (1) that trial counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant. *Strickland*, 466 US at 687; *Pickens*, 446 Mich at 303. Deficient performance means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 US at 687. Counsel's performance is deficient when it "[falls] below an objective standard of reasonableness . . . ." *Pickens*, 446 Mich at 303. To prove prejudice, the defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. "Effective counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eloby*, 215 Mich App 472, 476; 547 NW2d 48 (1996). "[T]his Court will

---

[4] *People v Ginther*, 390 Mich 436, 445; 212 NW2d 922 (1973).

not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice,* 235 Mich App 429, 445; 597 NW2d 843 (1999).

Defendant does not point to any particular witness or provide authority that failing to call an expert witness in a child-CSC case constitutes ineffective assistance of counsel. Defendant's theory is that the witnesses were coached and that their memories were suggested to them. Even if there were an expert willing to testify in this matter, it is unclear what, if anything, this hypothetical witness could have done to bolster defendant's case. We find no basis for reversal.[5]

Finally, defendant argues that he was improperly sentenced as a third offense habitual offender when he should have been sentenced as a second offense habitual offender.

MCL 769.11 states, in part:

> (1) If a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 131 of this chapter as follows:

> (a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, the court . . . may sentence the person to imprisonment for a maximum term that is not more than twice the longest term prescribed by law for a first conviction of that offense or for a lesser term.

"[A] defendant may not be convicted as a repeat offender unless the prior conviction(s) precede the offense for which the defendant faces enhanced punishment." *People v Stewart*, 441 Mich 89, 95; 490 NW2d 327 (1992). Here, the two felonies on defendant's record were committed in 1997 and in 2013. The charged offenses in this case were committed after 1997 but before 2013. Accordingly, defendant should have been sentenced as a second offense habitual offender under MCL 769.10. MCL 769.10 only allows an enhancement of the maximum sentence by a multiple of 1.5. The statutory maximum sentence for CSC II is 15 years, MCL 750.520c(2)(a), so defendant's 30-year maximum sentences exceed the allowable enhanced sentence under MCL 769.10. Defendant's judgment of sentence should be corrected to reflect that he is being sentenced as a second offense habitual offender and that his maximum sentences for the CSC II convictions are 22.5 years.[6]

---

[5] Nor was defendant's counsel ineffective for failing to object to the MCL 768.27a evidence on additional grounds, given that the evidence was admissible as discussed *supra*.

[6] CSC I allows for a sentence of life in prison, so the 50-year maximum sentence imposed by the court does not exceed the statutory maximum. See MCL 750.520b(2)(b).

Affirmed but remanded for correction of the judgment of sentence. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kurtis T. Wilder
/s/ Patrick M. Meter