# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DIONTEE LAQUINN BEAVERS,

        Defendant-Appellant.

UNPUBLISHED
May 2, 2017

No. 330867
Kent Circuit Court
LC No. 14-006054-FH

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

Defendant, Diontee Laquinn Beavers, appeals as of right his conviction after a bench trial of fourth-degree criminal sexual conduct (CSC-IV) (force or coercion), MCL 750.520e(1)(b). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 36 months' probation. Additionally, defendant was ordered to pay $400 in court costs, $600 in attorney fees, and $900 in probation supervision/oversight fees. We remand to the trial court for a *Ginther*[1] hearing on whether defendant's trial counsel was constitutionally ineffective for failing to pursue an insanity defense. Additionally, we remand for the purpose of establishing the factual basis for the court costs and attorney fees imposed by the trial court in the event it determines that defendant is not entitled to a new trial on his ineffective assistance of counsel claims.[2]

Defendant's arrest and subsequent conviction arose out of an incident that occurred as he was checking into a mental health facility, Pivot Crisis, on the evening of January 31, 2014. According to the victim, Carolyn Townsend, after assisting defendant and his mother with intake paperwork, defendant grabbed her in the crotch, over her vaginal area, for about three seconds. She stated that this occurred while she was holding a door open for defendant to allow him to enter a different area of the facility. Townsend testified that she responded to defendant's actions by asking what he was doing, to which he replied, "Oops, I messed up," before he and his mother left the facility.[3]

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] If defendant is granted a new trial, his argument concerning the court costs and attorney fees imposed by the trial court at sentencing will be moot.

[3] Defendant's mother testified that she did not see defendant touch the victim and that she and defendant left the facility because she did not think it would be a safe environment.

On appeal, defendant argues that his trial counsel was constitutionally ineffective for failing to pursue an insanity defense. There are "two components" to establishing an ineffective-assistance-of-counsel claim, the defendant must show first, "that counsel's performance was deficient," and second, that "the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted). Similarly, to establish prejudice under *Strickland*, a defendant is required to show that there exists a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The insanity defense statute, MCL 768.21a, provides:

(1) It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness as defined in section 400 of the mental health code, 1974 PA 258, MCL 330.1400, or as a result of having an intellectual disability as defined in section 100b of the mental health code, 1974 PA 258, MCL 330.1100b, that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. . . .

The testimony of defendant's mother, but more specifically letters from various medical professionals, including the examining psychiatrist from the Center for Forensic Psychiatry, which were available to defendant's trial counsel but not admitted at trial, demonstrate that defendant suffers from a mental illness and that one of the symptoms of that illness is that he acts in a hypersexualized manner when experiencing psychotic episodes. At trial, only defendant's mother testified to his mental illness and erratic behavior. She explained that defendant typically received medications when he went to the hospital to make him more "stable" and that he had been diagnosed with schizophrenia or bipolar disorder. Defendant's mother testified that the placement at Pivot Crisis was arranged by a social worker at the Metro Hospital after no beds were available at other facilities where defendant had previously stayed.

A letter written on February 13, 2014 by Michael Egan of Consumer Services Inc. states that defendant had been receiving mental health services since July 2012 in part because he "becomes hypersexual in a state of psychosis." Egan's letter stated that he met with defendant on January 31, 2014, the date of the incident, before defendant went to Pivot Crisis and that no psychiatric bed was made available to defendant at other facilities due to his past history.[4] Egan also stated in the letter that defendant was seen by a "Doctor Brubaker" on Monday, February 3rd where he continued to exhibit erratic behavior along with sexually inappropriate gestures. Another letter from a Dr. Carey Krause at Mercy Health stated that defendant came under her care after the incident at Pivot Crisis and that he exhibited "hypomanic symptoms" including

---

[4] Egan's letter suggests that the reason no other facility would take defendant was because of his history of acting in a hypersexual manner.

"making inappropriate sexual comments directed at staff." Krause's diagnosis was that defendant suffered from "Schizoaffective Disorder." A third letter from a Dr. Kevin Altman stated that defendant had been diagnosed the previous year with "limbic encephalitis."

Given this information, we conclude that an insanity defense could have made a difference in the outcome of the trial and that defendant's trial counsel had a responsibility to prepare, investigate, and, if viable, to present such a defense. Defendant's trial counsel did not call any of the medical personnel who wrote letters of defendant's diagnoses to testify at trial or seek to have their diagnoses introduced as evidence to support an insanity defense. While defendant's trial counsel did file a notice of intent to assert an insanity defense, he did not pursue the defense after an evaluation from the Center for Forensic Psychiatry came back unfavorably.[5] However, even the State's examiner concluded that defendant met the statutory criteria for a mental illness. The examiner also acknowledged that there was evidence, which he identified, that supported a finding of legal insanity, and he noted defendant's long history of psychosis. Ultimately, the examiner's conclusion that the evidence was insufficient for him to conclude that defendant was legally insane was largely based on what he deemed to be insufficient evidence to "definitively conclude" that defendant met the statutory criteria. The fact that the prosecution's expert did not render a favorable conclusion certainly did not preclude defendant's trial counsel from asserting that defense at trial or from seeking to have an independent evaluation at the expense of the county if defendant was indigent, MCL 768.20a(3). Indeed, the state's examiner's report could have provided much support for an insanity defense even though the ultimate conclusion was unfavorable. We can discern no strategic reason for defense counsel's failure to offer an insanity defense at trial or to at least investigate the possibility of doing so by seeking an expert review.

Defendant had a long history of psychosis accompanied by hypersexual activity, the incident occurred as defendant was being admitted to a psychiatric hospital for treatment of a psychotic episode, and the forensic examiner on which the prosecutor would rely agreed that defendant was mentally ill and that the issue of legal insanity was close. Moreover, defense counsel's chosen trial strategy appeared to be focused on contesting whether defendant's touching was for a sexual purpose, a necessary finding to conclude that he engaged in sexual contact, the first essential element of the charged offense.[6] However, the requirement that the touching of the victim be for a sexual purpose only requires that the prosecutor prove "that the intentional touch could *reasonably be construed* as being for [a] sexual purpose." *People v Piper*, 223 Mich App 642, 647; 567 NW2d 483 (1997) (citation and quotations omitted).[7] The

---

[5] The evaluation was performed pursuant to MCL 768.20a(2), which requires such evaluations be performed at the Center for Forensic Psychiatry whenever a defendant files a notice to present an insanity defense.

[6] "Sexual contact" is defined as "the intentional touching of . . . the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose . . . ." MCL 750.520a(q).

[7] When *Piper* was decided, "sexual contact" was defined in MCL 750.520a(k) under an earlier version of the statute as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose

statute does "not permit the court to instruct the jury . . . to consider defendant's mens rea." *Id*. at 650. Because grabbing and holding a person's genital area for no other apparent purpose, could objectively be viewed as for a sexual purpose, even if all of defense counsel's arguments and interpretations of the evidence had been accepted by the trial court, it still would not have negated a finding that defendant engaged in "sexual contact."

Though it appears based on the record before us that an insanity defense would have presented defendant with a far greater likelihood of success than that chosen by his trial counsel, because no *Ginther* hearing was held, we do not have any information about what actions defense counsel did take in investigating a potential insanity defense or any reasons defense counsel may have had, which are not discernable from the record, for not pursuing such a defense at trial; nor do we have testimony of a possible defense expert in order to weigh its potential effect on the jury. Accordingly, we remand to the trial court for a *Ginther* hearing so that a record can be made regarding what steps were taken by defendant's trial counsel to investigate a potential insanity defense, what, if any reason, he had for not further pursuing such a defense at trial, and whether evidence in support of an insanity defense would have presented a "reasonable probability that . . . the result of the proceeding would have been different," *Strickland*, 466 US at 694. The trial court may also hear a motion for new trial at that time. We retain jurisdiction so that after the completion of such a hearing, we can again review defendant's arguments.

Defendant also argues that the evidence was insufficient to support his conviction. "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). We "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). The prosecution was required to prove that defendant "engage[d] in sexual contact" and that "[f]orce or coercion [was] used to accomplish the sexual contact." MCL 750.520e(1)(b). As stated, there was sufficient evidence that defendant engaged in "sexual contact," the first essential element of the charged offense.

Additionally, the victim's testimony was sufficient for a rational trier of fact to conclude that "force or coercion" was used. Force or coercion "includes, but is not limited to" situations where the defendant "overcomes the victim through the actual application of physical force" and to situations where the defendant "achieves sexual contact through concealment or by the element of surprise." MCL 750.520e(1)(b)(*i*) and (1)(b)(*v*). The victim's testimony that defendant grabbed her on the outside of her clothing over her vaginal area and that he kept his hand there for three seconds was sufficient to conclude that defendant used force or coercion "through the actual application of physical force." MCL 750.520e(1)(b)(*i*). And her testimony that defendant engaged in this action as she was holding a door open for him to enter the facility was sufficient evidence for a rational trier of fact to conclude that he achieved sexual contact "by

---

of sexual arousal or gratification." 223 Mich App at 645. Thus, the language of the definition was essentially the same then as it is now. See MCL 750.520a(q).

-4-

the element of surprise." MCL 750.520e(1)(b)(*v*). Therefore, we reject defendant's argument that the evidence was insufficient to support his conviction.

Finally, defendant challenges the reasonableness of the court costs, attorney fees, and oversight fee imposed by the trial court. Defendant argues that this matter should be remanded pursuant to *People v Konopka (On Remand)*, 309 Mich App 345; 869 NW2d 651 (2015), because the trial court did not provide a factual basis for these costs. In *Konopka*, we held that remand was the appropriate remedy where the trial court "did not establish a factual basis" for the costs imposed under MCL 769.1k(1)(b)(*iii*) and where without such a factual basis this Court could not "determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court." *Id.* at 359-360. The prosecution acknowledges in its brief on appeal that this case is comparable to *Konopka* and that remand to the trial court is required to determine the reasonableness of the court costs and attorney fee assessed. Therefore, if after the conclusion of the *Ginther* hearing, the trial court determines that defendant is not entitled to a new trial on his ineffective assistance of counsel claim, it must then establish a factual basis for the costs imposed to ensure that the court costs were reasonably related to the actual costs incurred by the trial court and to ensure that the attorney fee is only to recoup the costs of providing the legal assistance actually rendered to defendant.

As it concerns the $900 probation supervision fee, MCL 771.3c provides a schedule for determining the fee based on the probationer's income. The Presentence Investigation Report indicates that defendant receives a monthly income of $730 from Social Security Disability payments. MCL 771.3c states that a probationer earning this amount of income per month should pay a fee of $25 per month. As defendant was sentenced to three years' probation, 36 months multiplied by $25 per month equals $900. Therefore, the fee imposed by the trial court was in compliance with MCL 771.3c and is affirmed.

We remand to the trial court for a *Ginther* hearing to determine whether defendant's trial counsel was constitutionally ineffective for failing to pursue an insanity defense and, if it is determined that defendant's trial counsel was not ineffective, for a hearing to determine the reasonableness of court costs and attorney fees imposed. We retain jurisdiction.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

# Court of Appeals, State of Michigan

## ORDER

People of MI v Diontee Laquinn Beavers

Docket No. 330867

LC No. 14-006054-FH

Jane M. Beckering
Presiding Judge

Jane E. Markey

Douglas B. Shapiro
Judges

Pursuant to the opinion issued concurrently with this order, the Court REMANDS this matter to the Kent Circuit Court, pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1993), for an evidentiary hearing on, and a determination of, whether defendant's trial counsel was constitutionally ineffective for failing to pursue an insanity defense. We retain jurisdiction only for the purpose of evaluating the merits of defendant's ineffective assistance claim.

Proceedings on remand in this matter shall commence within 35 days of the Clerk's certification of this order. The circuit court shall give priority to the proceedings on remand until they are concluded. The parties shall promptly file with this Court a copy of all papers filed on remand in conjunction with the *Ginther* hearing. Defendant shall file with this Court copies of all orders entered on remand within 7 days of their respective entry. The transcript of the *Ginther* proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

As also stated in the accompanying opinion, the Court REMANDS this matter for the purpose of establishing the factual basis for the court costs and attorney fees imposed by the trial court in the event it determines that defendant is not entitled to a new trial on his ineffective of counsel claims. See MCL 769.1k(b)(iii); *People v Konopka (On Remand)*, 309 Mich App 345; 869 NW2d 651 (2015).

This order has immediate effect. MCR 7.215(F)(2).

/s/ Jane M. Beckering

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 2, 2017
Date

Chief Clerk