# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAYSHON DEVON DOVER,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 336239
Wayne Circuit Court
LC No. 16-006958-01-FH

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of possession with intent to deliver less than 50 grams of a mixture containing heroin, MCL 333.7401(2)(a)(*iv*), possession with intent to deliver less than 50 grams of a mixture containing cocaine, MCL 333.7401(2)(a)(*iv*),[1] possession of a firearm by a felon (felon-in-possession of a firearm), MCL 750.224f, possession of ammunition by a felon (felon-in-possession of ammunition), MCL 750.224f(3), and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent sentences of 36 months to 20 years' imprisonment for each possession with intent to deliver conviction and one to five years' imprisonment for each felon-in-possession conviction, and a consecutive five-year sentence for the felony-firearm (second offense) conviction, with credit for 341 days for time served. We affirm defendant's convictions, but remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In early November 2015, a confidential informant contacted Dearborn Heights Police Officer Joseph Reyna about a person selling drugs out of a house on Dartmouth Street. The informant described the person as having a thin build and provided Reyna with a photograph of the person that he had taken with his cell phone.

---

[1] The judgment of sentence incorrectly reflects that Count 2 involved heroin. On remand, the trial court should correct the judgment of sentence to indicate that Count 2 involved cocaine.

-1-

The police conducted surveillance of the house and observed heavy foot and vehicle traffic to and from the house, which, according to Reyna, is consistent with narcotics trafficking. Reyna observed defendant in the yard and also saw other people going to and from the house. Corporal Carrie Hatten, who also participated in the surveillance of the house, saw defendant two to five times at the house.

Reyna directed the informant to conduct "controlled buys" of drugs at the house with prerecorded funds. The informant made three controlled buys at the address in November and early December 2015. The informant said that he called a phone number that began with 231 and ended with 3635 in order to set up the transactions. Sergeant Robert Schnell testified that, during all three controlled buys, an individual who matched the description given by the informant was present. Schnell identified this individual as defendant. On one occasion, defendant went inside the house with the informant. Schnell, however, never observed the actual delivery of drugs during the buys. Schnell observed several other men who "frequented the location" during the controlled buys, but none of them matched the description given by the informant. According to Schnell, the vehicle and foot traffic to the house was not "extremely heavy," but it was short-term, which is indicative of narcotics trafficking.

Based on the controlled buys, Reyna obtained a search warrant for the address. The search warrant was executed on December 3, 2015. Earlier in the day, Hatten set up surveillance on the house. Hatten observed defendant get into his vehicle and leave the residence. Hatten followed defendant and had him pulled over. According to Reyna, defendant was pulled over because he was the subject of the investigation. Defendant was taken into custody. No firearms, drugs, or buy money were found on defendant's person when he was arrested.

After Hatten left the house to follow defendant, police entered the home and conducted a search. The officers found a woman, Patricia Cox, in one of the bedrooms of the home. The other bedroom appeared to be that of a child. The officers found a Michigan identification card belonging to defendant in the kitchen, and an advertisement for DISH Network sent to the Dartmouth Street address with defendant's name on it. The address on defendant's identification card was on Oakland Street.

Hatten returned to the house and participated in the search. She found a prescription medication bottle containing 2.409 grams of cocaine and .339 grams of heroin in a utility room, as well as a "loaded three eighty Cobra, hand gun" in a drawer. Hatten also found razors, a calculator, baggies, and lottery tickets. Hatten testified that those items are normally used in drug transactions for packaging heroin and cocaine. Hatten additionally found a grinder, digital scales, and nine cell phones. She also found a box of "three eighty auto ammunition" in a drawer, two boxes of "Winchester thirty-eight specials," a paper listing individuals' names with numbers next to the names, and court paperwork for defendant. A loaded rifle under a shelf was in plain view. Hatten discovered business cards with a phone number and the name "Fresh" on them. The first three digits of the phone number on the cards were 231 and the last four digits were 3635. No officers testified as to whether any of the cell phones found had a 231 area code; Reyna stated that the police did not obtain search warrants for that information.

Reyna interviewed defendant later on December 3, 2015. During the interview, defendant stated that the Oakland Street address was his aunt's house, where he had stayed

before he went to prison. He denied staying at the house on Dartmouth Street with Cox, but said that he would "be there from time to time." Defendant said that other people stayed there and that the guns did not belong to him. Defendant said that the guns were brought there for protection because the house had been shot at two weeks earlier, and that the handgun belonged to Cox's cousin. Defendant also stated that other people deal drugs from the house. Defendant eventually admitted that he sold drugs "from time to time to make ends meet." He said that he purchased the drugs from a man who was known as "Bird." Defendant said that he usually buys a "ball" of cocaine or a half gram of heroin from Bird. Defendant did not deny having knowledge that the guns were in the house, but he maintained that they did not belong to him.

Defendant's father testified that in December 2015 defendant lived with him at his home, and that defendant received mail there and was employed doing construction work. Defendant's father had not seen anything suggesting that defendant was involved in drug activity. Defendant's father testified that defendant was dating a woman who lived at the house on Dartmouth Street at the time of his arrest.

Before trial, defendant filed a motion to quash the search warrant and suppress the evidence seized in the search, to produce the confidential informant, and for an evidentiary hearing to determine the validity of the search warrant and the veracity of the informant. The trial court addressed defendants' motion at a final pretrial conference and denied it. The trial court determined that defendant was not entitled to an evidentiary hearing because he had failed to identify what portions of the search warrant affidavit allegedly were false, because defendant's identity was not presumed in the affidavit, and because the search warrant was for the residence, not defendant. At the conference, defense counsel raised as an additional issue that defendant had been arrested without probable cause and that his statements to police while in custody were therefore the "fruit of the poisonous tree" of the allegedly illegal arrest. The trial court held that the issue was not properly before it, apparently because defense counsel had not filed a motion challenging the legality of defendant's arrest.

At trial, the parties stipulated that defendant was ineligible to possess a firearm or ammunition on December 3, 2015. After the prosecution rested its case, defendant moved for a directed verdict. The trial court denied the motion. The jury convicted defendant as described.

Before sentencing, defendant filed another motion for a directed verdict or new trial, raising, among other issues, the issue of the legality of his arrest. The trial court denied the motion at the sentencing hearing and sentenced defendant as described. This appeal followed. In addition to his appellate brief, defendant also filed a Standard 4[2] brief raising several additional issues.

## I. DEFENDANT'S BRIEF ON APPEAL

Defendant raises the following issues in his brief on appeal.

---

[2] A supplemental appellate brief filed in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order 2004-6, Standard 4.

A.  SUFFICIENCY OF THE EVIDENCE

First, defendant argues that there was insufficient evidence to support his convictions. We disagree.

> This Court reviews de novo challenges to the sufficiency of the evidence. This Court must determine whether the evidence was sufficient to justify a rational trier of fact's conclusion that the evidence proved the essential elements of the crime beyond a reasonable doubt.  In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses. All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime.  [*People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted).]

"[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).  "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense.  In other words, a defendant's intent can be proved by circumstantial evidence." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (citations omitted).

Defendant only challenges the possession element of the drug and weapons offenses of which he was convicted, arguing that he did not have constructive possession of the drugs or guns.  With regard to the element of possession in criminal offenses, our Supreme Court has stated:

> This Court has held that for possessory crimes in Michigan, actual possession is not required; constructive possession is sufficient.  The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband.  Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . .  [*People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012)(citations and quotation marks omitted).]

In other words, constructive possession means that the defendant "had the right to exercise control of the [contraband] and knew that it was present." *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992) (citation and quotation marks omitted). "It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession.  Instead, some additional connection between the defendant and the contraband must be shown." *Id*. (citations omitted).

Here, viewed in the light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find that defendant had constructive possession of the cocaine and heroin.  The drugs were found in the house on Dartmouth Street where defendant's identification

card, mail, and court paperwork were found. Although the identification card had a different address on it, its presence in the home, combined with the other documents, supports the inference that defendant resided there. Defendant also admitted that the address on the identification card was a previous address belonging to his aunt, although he claimed to live with his father elsewhere. Additionally, the police observed defendant outside the house on Dartmouth Street on several occasions, and defendant matched the description provided by the informant of the person who was selling drugs from the house. Schnell also observed defendant's presence during each of the controlled buys, although he did not actually see the drugs being delivered. Furthermore, defendant admitted to police that he stayed at the house from time to time and that he sold drugs. The controlled buys, as well as defendant's admissions, established an "additional connection" between defendant and the drugs, such that he was not merely present at the location where the drugs were found. *Wolfe*, 440 Mich at 520. Defendant's knowledge of and right to exercise control over the drugs could be inferred from defendant's residence at the house, and his intent to exercise control over the drugs could be inferred from the controlled buys and his admissions.

There was also sufficient evidence for a rational factfinder to find that defendant had constructive possession of the guns and ammunition discovered. The guns and ammunition were also found in the house where defendant's identification card, mail, and court paperwork were found. Again, the police observed defendant at the house on several occasions, including during the controlled buys, and defendant matched the description provided by the informant. Defendant also admitted having knowledge that guns were in the house, although he denied that they belonged to him. Although he claimed that the handgun belonged to one of his girlfriend's family members, no proof of residency was found for any other individuals besides Cox. The police also had information that the person selling drugs carried a handgun. The controlled buys from the house provided an "additional connection" between defendant and the guns and ammunition, which were found near the drugs in the house. *Wolfe*, 440 Mich at 520. As with the drugs, defendant's knowledge of and right to exercise control over the guns and ammunition could be inferred by a rational jury from the evidence presented.

Defendant argues that (1) none of the prerecorded funds from the controlled buys were found on him, (2) there was no evidence that any of the cell phones found had a 231 number, (3) the informant said that the person who sold drugs from the house carried a handgun on his waist, but no handgun was found on defendant, (4) no fingerprint evidence was introduced, (5) the informant provided a vague description that could have matched many of the individuals seen at the home and the informant never participated in a lineup, (6) Hatten did not document the dates on which she saw defendant and she never observed any drug transactions, and (7) a handwriting analysis was not performed on the drug ledger. While these arguments point to weaknesses in the prosecution's case, many of them go to the weight of the evidence and credibility, rather than sufficiency. In short, they do not render a rational juror incapable of concluding that defendant was guilty beyond a reasonable doubt. For example, with regard to the lack of prerecorded funds, cell phone examination, identification of defendant via lineup, handwriting analysis, or fingerprint analysis, these are merely methods that would have additionally supported the prosecution's proofs; their absence does not invalidate the evidence that was presented. And the fact that defendant was not found in actual possession of a handgun does not invalidate the prosecution's case for constructive possession; nor will we second-guess the jury's determination

that the information provided by the informant was credible. *Solloway*, 316 Mich App at 180-181. The same is true for defendant's characterization of the description provided by the informant as vague or fitting several visitors to the house.

## B. SENTENCING

Defendant also contends that he is entitled to resentencing because the trial court erred with regard to the assessment of points for prior record variable (PRV) 1, offense variable (OV) 13, and OV 15. We agree that defendant is entitled to resentencing based on the trial court's erroneous scoring of OV 13 and OV 15.[3]

"A challenge to a sentence that is within the guidelines sentence range is preserved when it is raised at sentencing, in a motion for resentencing, or in a motion to remand filed in the Court of Appeals." *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013). Defendant did not raise the alleged scoring errors at sentencing, in a motion for resentencing, or in a motion to remand. Therefore, this issue is unpreserved. Unpreserved scoring errors are reviewed for plain error affecting defendant's substantial rights. *People v Anderson*, ___ Mich App ___, ____; ___ NW2d ___ (2018) (Docket No. 334219); slip op at 6. "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *Id*. at ___; slip op at 6 (citation and quotation marks omitted). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Loper*, 299 Mich App at 457.

Defendant was assessed 25 points for PRV 1. PRV 1 is scored for "prior high severity felony convictions." MCL 777.51(1). Under MCL 777.51(1)(c), 25 points are assessed if "[t]he

---

[3] The prosecution concedes that the trial court erred by assessing points for OV 13 and OV 15. Nonetheless, the prosecution argues, resentencing is not required because defendant failed to preserve the issue by raising it at sentencing, in a motion for resentencing, or in a motion to remand filed with this Court, and defendant's sentence still falls within the corrected guidelines minimum sentence range, considering defendant's habitual offender enhancement. See MCL 769.34(10). We disagree. A defendant who fails to preserve his claim under MCL 769.34(10) may nonetheless receive plain error review of his sentence. *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013). If an error is discovered that is plain and prejudicial, in other words that denied a defendant the chance to be "sentenced according to accurately scored guidelines and in reliance on accurate information," this Court may remand for resentencing. *People v Francisco*, 474 Mich 89-90; 711 NW2d 44 (2006). The errors in defendant's scores for OV 13 and 15 are, as the prosecution admits, plain, and they altered the recommended guidelines minimum sentence range. "[R]equiring resentencing in such circumstances not only respects the defendant's right to be sentenced on the basis of the law, but it also respects the trial court's interest in having defendant serve the sentence that it truly intends." *Id*. at 90.

offender has 1 prior high severity felony conviction." "Prior high severity felony conviction" means:

(a) A crime listed in offense class M2, A, B, C, or D.

(b) A felony under a law of the United States or another state corresponding to a crime listed in offense class M2, A, B, C, or D.

(c) A felony that is not listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of 10 years or more.

(d) A felony under a law of the United States or another state that does not correspond to a crime listed in offense class M2, A, B, C, D, E, F, G, or H and that is punishable by a maximum term of imprisonment of 10 years or more. [MCL 777.51(2).]

Defendant asserts that he did not commit any of the offenses listed in MCL 777.51(1)(c), and that PRV 1 therefore should have been assessed zero points. Defendant's presentence investigation report (PSIR) indicates that he had prior convictions for carrying a concealed weapon (CCW) in 2009, possession with intent to deliver less than 50 grams of a controlled substance in 2010, and felon-in-possession and felony-firearm in 2012. CCW and felon-in-possession are class E offenses, MCL 777.16m, and, therefore, are not "prior high severity felony convictions." MCL 777.51(2)(a). Felony-firearm is not assigned an offense class, but the maximum term for a first-offense conviction is only two years. MCL 750.227b. Therefore, it is also not a "prior high severity felony conviction." MCL 777.51(2)(c). Possession with intent to deliver less than 50 grams of a schedule 1 or schedule 2 controlled substance is a class D offense. MCL 333.7401(2)(a) (*iv*); MCL 777.13m. Defendant's PSIR, however, does not indicate what controlled substance was involved in that 2010 conviction or whether defendant was convicted under MCL 333.7401(2)(a)(*iv*).[4] Nonetheless, for the reasons discussed later in this opinion, defendant is entitled to resentencing. Accordingly, at resentencing, the trial court should determine whether defendant's 2010 conviction for possession with intent to deliver less than 50 grams of a controlled substance constitutes a "prior high severity felony conviction" for purposes of scoring PRV 1.

Defendant was also assessed 10 points for OV 13. OV 13 relates to a "continuing pattern of criminal behavior." MCL 777.43(1). Under OV 13, 10 points are assessed if "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property or a violation of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code," MCL 777.43(1)(d), or "[t]he offense was part of a pattern of

_____

[4] We note that there is no other offense for possession with intent to deliver less than 50 grams of a controlled substance. However, defendant did state in his interview to the police that he had a prior conviction for manufacturing marijuana, which does not appear on his PSIR. In any event, because resentencing is required for other reasons, this issue may be explored at resentencing.

felonious criminal activity involving a combination of 3 or more violations of section 7401(2)(a)(*i*) to (*iii*) or section 7403(2)(a)(*i*) to (*iii*) of the public health code," MCL 777.43(1)(e). Defendant is correct that the trial court erred by assessing 10 points for OV 13. None of his prior offenses within the five-year period prescribed by MCL 777.43(2)(a) are crimes against persons or property or violations of specific sections of the public health code. None of his firearm offenses are classified as crimes against persons or property or violations of the public health code, and defendant was convicted of two counts of violation of MCL 333.7401(2)(a)(*iv*), which, while a violation of the public health code, is not listed in MCL 777.43(1)(d). Therefore, the trial court plainly erred by assessing 10 points against defendant under this variable. *Anderson*, ___ Mich App at ___; slip op at 6 (citation and quotation marks omitted).

Finally, defendant was assessed 10 points for OV 15. OV 15 relates to "aggravated controlled substance offenses." MCL 777.45(1). Under OV 15, 10 points must be assessed if "[t]he offense is a violation of [MCL 333.]7401(2)(a)(*i*) to (*iii*) pertaining to a controlled substance classified in schedule 1 or 2 that is a narcotic drug or a drug described in section 7214(a)(*iv*) and was committed in a minor's abode, settled home, or domicile, regardless of whether the minor was present." MCL 777.45(1)(f) and (g). Defendant was not convicted of a violation of MCL 333.7401(2)(a)(*i*) to (*iii*). Therefore, the trial court plainly erred by assessing 10 points against defendant under this variable. *Anderson*, ___ Mich App at ___; slip op at 6 (citation and quotation marks omitted).

Defendant's total PRV score was 70, and his total OV score was 20, placing him in cell E-II of the class D grid. MCL 777.65. Defendant's minimum guidelines range was 10 to 23 months, before any sentencing enhancement. MCL 777.65. Had OV 13 and OV 15 been assessed at zero points, however, defendant's OV score would have been zero, placing him in OV level I, and defendant's minimum sentence guidelines range would have been 5 to 23 months, before any enhancement. MCL 777.65. Accordingly, defendant is entitled to resentencing. See *People v Jackson*, 487 Mich 783, 793; 790 NW2d 340 (2010) ("[A] defendant is entitled to resentencing when the trial court erred in scoring an offense variable, and the error affected the statutory sentencing guidelines range."); see also *Loper*, 299 Mich App at 457. At resentencing, the trial court should also determine whether PRV 1 was properly scored.

III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises the following issues in his Standard 4 brief.

A. ADMISSION OF STATEMENTS

First, defendant contends that the trial court erred by failing to rule on his motion to suppress his statements to police or to conduct an evidentiary hearing, and by improperly admitting his statements at trial. We disagree.

Generally, to preserve an issue for appeal, it must be raised, addressed, and decided by the lower court. *People v Metamora Water Serv*, 276 Mich App 376, 383; 741 NW2d 61 (2007). Here, although this issue was not raised in defendant's pretrial motion to suppress, defendant's counsel raised the issue at the final pretrial conference and it was ultimately addressed and

decided by the trial court in ruling on defendant's post-trial motion. We therefore conclude that the issue is preserved. This Court reviews "for clear error a trial court's findings of fact in a suppression hearing," but reviews de novo its ultimate decision on a motion to suppress. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

As discussed earlier in this opinion, defendant did not assert in his motion to suppress that his statement should be suppressed on the basis of the allegedly improper arrest. Defendant's trial counsel first raised the issue at the final pretrial conference, and the prosecution stated that it was not prepared to address the issue at that time because it had not been raised in defendant's motion. The trial court noted that the issue was not properly before it that day and that the deadline for filing motions had passed. Accordingly, the trial court did not err by refusing to rule on defendant's oral motion to suppress his statement on the basis of the allegedly improper arrest. MCR 2.119(A)(1); MCR 6.001(D); see also *People v Martinez*, 307 Mich App 641, 648 n 4; 861 NW2d 905 (2014). Nor did the trial court err by declining to order an evidentiary hearing on defendant's oral motion. See *People v* Franklin, 500 Mich 92, 109; 894 NW2d 561(2017) ("In general, trial courts in our state possess reasonable discretion regarding whether to hold hearings concerning the range of motions that typically come before them.").

Moreover, the trial court did not err by ruling, after trial, that defendant's arrest was proper because it was supported by probable cause. Although the police did not have a warrant for defendant's arrest, the police may arrest a defendant without a warrant "if there is probable cause to believe that a felony was committed by the defendant." *People v Chapo*, 283 Mich App 360, 366-367; 770 NW2d 68 (2009). "Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed. The standard is an objective one, applied without regard to the intent or motive of the police officer." *Id.* (citations and quotation marks omitted). In this case, the police had probable cause at the time of the arrest to believe that defendant had committed a felony. Based on the police officers' observations of defendant and the controlled buys at his residence, a reasonable person would believe that defendant was in actual or constructive possession of controlled substances with the intent to deliver them, and the trial court did not err by denying defendant's motion. *Hyde*, 285 Mich App at 436.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant also contends that there was insufficient evidence to support his convictions. As discussed, there was sufficient evidence to support defendant's conviction. We have reviewed defendant's additional arguments concerning the sufficiency of the evidence against him at trial and conclude that none of them have merit.

## C. CONFRONTATION CLAUSE

Defendant further argues that he was denied a fair trial by the admission of testimony regarding hearsay statements made by the confidential informant without his having had the opportunity to confront the informant. We disagree. An alleged violation of the right of confrontation is a question of constitutional law that we review de novo. *People v Fackelman*, 489 Mich 515, 524; 802 NW2d 552 (2011).

A defendant has the right to be confronted with the witnesses against him or her. The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. A statement by a confidential informant to the authorities generally constitutes a testimonial statement. However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted. Thus, a statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause. Specifically, a statement offered to show why police officers acted as they did is not hearsay. [*People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007) (citations omitted).]

Defendant makes several challenges to Reyna's testimony. The record reveals that the trial court sustained defense counsel's objections to Reyna's testimony about statements made by the informant. Apart from the sustained objections, Reyna's testimony does not contain statements allegedly made by the informant. Reyna's attempts to repeat statements allegedly made by the informant were quickly interrupted by counsel's objections, and the jurors were instructed to only consider properly admitted testimony. Jurors are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Although the trial court did not specifically strike Reyna's brief interrupted statements, we conclude that no prejudicial error occurred. *Id*. at 213. And the remainder of Reyna's testimony concerning the informant was offered to show why the investigation proceeded the way that it did. *Chambers*, 277 Mich App at 10-11.

Defendant also makes challenges to the testimony of Hatten and Schnell, but our review of the record reveals that they did not testify to out of court statements made by the informant. *Id*.

## D. HABITUAL OFFENDER ENHANCEMENT

Lastly, defendant contends that he is entitled to resentencing because he was not given proper notice of the prosecution's intent to enhance his sentence, and the record does not indicate under which provision the trial court enhanced his sentence. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (citation and quotation marks omitted). Defendant did not argue in the trial court that he was not given proper notice of his sentence enhancement or that the trial court failed to indicate under which statutory provision it was enhancing defendant's sentence. Therefore, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting defendant's substantial rights. *Id*.

With regard to the notice issue, MCL 769.13 provides in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter,

by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Defendant is correct that, based on the register of actions, there is no evidence that a separate document containing notice of the prosecution's intent to enhance defendant's sentence or a proof of service was filed within 21 days *after* defendant's arraignment on the information, which occurred on August 17, 2016. Nonetheless, we conclude that notice was properly provided. The felony warrant and felony complaint contained a written notice of the prosecution's intent to seek a fourth-offense habitual offender sentence enhancement. Those documents are both contained in the lower court file and thus were presumably filed in the district court before defendant's arraignment on the information on August 17, 2016. Written notice was also provided in the unsigned copy of the felony information dated July 19, 2016. Accordingly, the prosecution fulfilled its obligation to provide written notice within 21 days of the arraignment as required by MCL 769.13(1).

Moreover, the prosecution fulfilled its obligation under MCR 769.13(2) to file written notice with the circuit court. Written notice was contained in the felony information, warrant, and complaint, and the register of actions contains an entry on July 26, 2016 stating: "Habitual Offender." Moreover, as evidenced by the "Bindover Packet" filed with the circuit court on August 10, 2016, the warrant, complaint, felony information, and other documents were forwarded to the circuit court and they appear in the circuit court record.

With regard to the personal service of notice, defendant was arraigned on August 17, 2016 and, under MCR 6.113(B), the prosecution was required to give defendant a copy of the information, which included the notice. Although defendant waived a formal reading of the information, this did not mean that he was denied an opportunity to review it. See *Henry* (*After Remand*), 305 Mich App at 159. Moreover, defendant had access to the felony information, warrant, and complaint, which contained the notice. See *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013); *People v Waclawski*, 286 Mich App 634, 707; 780 NW2d 321 (2009).

We reject defendant's claim that the prosecution's failure to file a proof of service of the notice of intent automatically requires reversal. Defendant does not deny actual knowledge of the prosecutor's intent. Any error in the prosecution's failure to file a proof of service was harmless. *People v Head*, ___ Mich App ___; ___ NW2d ___ (2018), slip op at 8; see also *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999). Therefore, although

defendant is entitled to resentencing on other grounds, the fourth-offense habitual offender notice remains in effect.

Defendant also argues that resentencing is required because the trial court failed to specify under which provision it was enhancing his sentence. According to defendant, the trial court may have enhanced defendant's sentence under the fourth-offense habitual offender statute, MCL 769.12, the repeat controlled substances offense statute, MCL 333.7413, or both. This Court has held that a defendant's sentence cannot be enhanced under both the habitual offender provisions and the controlled substance enhancement provision. *People v Fetterley*, 229 Mich App 511, 540; 583 NW2d 199 (1998).

Defendant's sentencing information report reflects that the upper limit of his minimum sentence guidelines range was increased by 100%, from 23 to 46 months, which is consistent with defendant being sentenced a fourth-offense habitual offender. MCL 777.21(3)(c). This is also consistent with the prosecution's statement at sentencing that the guideline should be 10 to 46 months, instead of 10 to 23 months, based on the fourth-offense habitual offender notice. There is no indication that defendant's sentence was also enhanced under the repeat controlled substance offender statute, MCL 333.7413. MCL 33.7413 was never discussed, and, in fact, does not apply in this case because it only applies to violations of MCL 333.7401(2)(a)(*ii*) and (*iii*), and defendant was convicted under MCL 333.7401(2)(a)(*iv*). Defendant's argument on this issue is meritless.

Remanded for resentencing and for correction of the judgment of sentence. Affirmed in all other respects. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

-12-