*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. D. FORTUNE, Minor.

UNPUBLISHED
April 7, 2022

No. 357678
Wayne Circuit Court
Family Division
LC No. 2014-516286-NA

Before: GLEICHER, C.J., and K. F. KELLY and PATEL, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court's order terminating her parental rights to her son, ID, who tested positive for cocaine at birth in May 2019.[1] Finding no error warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves respondent's ongoing struggles with drug addiction, mental illness, and domestic violence. Along with other issues, such struggles have previously resulted in the termination of her parental rights to four other children: CR, RC, JR, and IT. The circumstances concerning those prior terminations are set forth in *In re I T Fortune*, unpublished per curiam opinion of the Court of Appeals, issued January 30, 2020 (Docket No. 349154).

It is undisputed that respondent's minor child, ID, who was born less than three months after entry of the termination order concerning IT, tested positive for cocaine at birth and at the time of his removal. It was also discovered that respondent had ID "sleeping in a dresser drawer" at her residence. Although respondent had stable housing, she had no documented source of income, and she was not receiving any treatment or medication for her diagnosed psychiatric problems. Following a bench trial, the trial court found that there were grounds to exercise jurisdiction over ID. However, the court denied petitioner's first request to terminate respondent's

---

[1] The trial court also terminated the parental rights of ID's father, but he is not a party to this appeal.

parental rights to ID at the initial dispositional hearing and allowed respondent to participate in services aimed toward reunification.

Respondent entered into a parent-agency treatment plan and was referred for various services, including a psychological evaluation, substance-abuse assessments, parenting classes, and random drug screens. A series of review hearings were held and, over the course of several months, respondent made consistent progress toward reunification. By the time of the third review hearing in July 2020, respondent had given birth to another child, KB, who had not been removed from respondent. Respondent continued to engage in services and to return negative drug-test results. Accordingly, her visits with ID—which had originally been supervised at the agency—were changed to supervised home visits, and then unsupervised overnight visits. Following the fourth review hearing in September 2020, at petitioner's recommendation, the trial court ordered that ID be returned to respondent's care under a Family Reunification Plan (FRP) or some similar arrangement.

Following reunification, however, circumstances changed for the worse. At a review hearing in December 2020, caseworkers informed the trial court that respondent had "admitted to having a relapse and using cocaine,"[2] and Children's Protective Services from the Michigan Department of Health and Human Services was investigating the matter. Respondent had also missed a drug screen on November 25, 2019. And she had gone through a contentious "breakup" with her ex-boyfriend—KB's father—who had made threats that left her "really worried about her safety." A safety plan was implemented, under which, among other things, respondent was to have "no contact" with KB's father. Consistent with petitioner's recommendations, the trial court maintained reunification as the permanency planning goal, re-referred respondent for random drug screens, and ordered the continuation of FRP services pending another review hearing.

In January 2021, respondent admittedly violated the no-contact provision of the safety plan that had been put in place regarding KB's father. Because she was upset about threats and insults he had made regarding KB, including that KB was not his child, that he would "smack her if he ever s[aw] her," and that he would "prostitute" the infant, respondent went to his place of employment and confronted him. An incident involving domestic violence ensued, and respondent was charged with several criminal offenses as a result, including domestic violence and felonious assault.[3]

After respondent was arrested, both ID and KB were removed and placed back into foster care, and petitioner filed supplemental petitions seeking termination of respondent's parental rights to both children, along with termination of the parental rights of each child's respective father. Following a termination hearing, the trial court found that, as to respondent, grounds for termination had each been established by clear and convincing evidence. The court also found that termination of respondent's parental rights was in ID's best interests. This appeal followed.

---

[2] Respondent denied making any such admission.

[3] In light of those pending criminal charges, respondent asserted her Fifth Amendment privilege under the United States Constitution against self-incrimination when questioned regarding the details of the January 2021 incident.

## II. STANDARDS OF REVIEW

We review for clear error a trial court's decision whether grounds for termination have been proven by clear and convincing evidence. *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016). We also review for clear error a trial court's best-interest determination. *Id*. "A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made," with the reviewing court "defer[ring] to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014). Any related questions of statutory interpretation are reviewed de novo. *Id*.

## II. ANALYSIS

Respondent first argues that the trial court clearly erred by finding that at least one statutory ground for termination of her parental rights was established by clear and convincing evidence. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). The clear and convincing evidence standard is "the most demanding standard applied in civil cases[.]" *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing if it

> produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. [*Id*. (quotation marks, citation, and brackets omitted).]

"Evidence may be uncontroverted, and yet not be 'clear and convincing.' " *Id*. (quotation marks and citation omitted). "Conversely, evidence may be 'clear and convincing' despite the fact that it has been contradicted." *Id*. (quotation marks and citation omitted).

In support of termination, the trial court relied on four distinct statutory grounds: MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), (c)(*ii*) (failure to rectify conditions other than those that led to adjudication), (j) (the child is reasonably likely to be harmed if returned to the parent's home), and (l) (parental rights to another child were voluntarily terminated in a prior proceeding and aggravating circumstances are present). As an initial consideration, we conclude that even under the "highly deferential" standard of review that applies here, see *People v McSwain*, 259 Mich App 654, 683; 676 NW2d 236 (2003), the trial court clearly erred by finding clear and convincing evidence in support of termination under MCL 712A.19b(3)(l), because that subsection applies only where a parent's rights to another child were *voluntarily* terminated following the initiation of child protective proceedings, and it is undisputed that respondent's parental rights to all of her other children were involuntarily terminated. But because the trial court did not clearly err with regard to *all* of the statutory grounds it cited, and only one ground for termination need be proven, the error is harmless. See *In re Ellis*, 294 Mich App at 32 ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds.").

-3-

Termination of respondent's parental rights was proper under MCL 712A.19b(3)(j). Respondent's sole argument concerning MCL 712A.19b(3)(j) is based on *In re Baham*, 331 Mich App 737, 758-759; 954 NW2d 529 (2020), in which we stated: "In light of respondent's undisputed progress toward reunification, to the extent that the court found a *reasonable* probability of harm to BB if returned to respondent's care, the court's finding was clearly erroneous." Respondent contends that here, as in *In re Baham*, the trial court clearly erred by finding that there was a "reasonable" probability that ID would suffer harm if returned to respondent's custody. We disagree.

*In re Baham* is factually distinguishable from the instant case. In that case, the respondent was making "undisputed progress toward reunification," "was compliant with services and was seeking out additional services," was incarcerated but showing "exemplary" behavior while in prison, was "attending vocational school while in prison" and had recently earned her GED [General Educational Development degree], and had a family that was "supportive of her, both financially and emotionally[.]" *Id*. at 758. In contrast here, respondent had already *achieved* reunification, but then had ID and KB removed as a result of her admitted relapse into cocaine use and subsequent arrest following the January 2021 domestic violence incident. Respondent was also noncompliant with services, having failed to submit to a single court-ordered drug screen for months before the termination hearing. There was also no evidence that respondent was seeking to better her position through education or that she had the level of family support that was present in *In re Baham*.

We are also unpersuaded by respondent's contention that there was not sufficient evidence establishing a reasonable likelihood that ID would suffer harm if returned to her care. It is true that there is no evidence that ID ever suffered any *physical* harm in respondent's care. But there is ample evidence that respondent is engaged in a pattern of dating—and having children with—violent, abusive men. Indeed, at the termination hearing, respondent admitted that KB's father had recently threatened to physically abuse the child or "prostitute" her. Given respondent's pattern of dating such men—and maintaining contact with them even after their abuse is evident—there is a very real danger that she will continue to expose her children to the risk of physical harm that such individuals pose. Moreover, for purposes of MCL 712A.19b(3)(j), "the harm in question need not be physical; a risk of *emotional* harm can suffice." *In re Pederson*, 331 Mich App 445, 473; 951 NW2d 704 (2020) (quotation marks and citation omitted). In this case, there was evidence that ID had already suffered emotional harm from being reunified with respondent, as evidenced by generalized fear and "night terrors" that ID exhibited after reunification. And in light of the evidence concerning respondent's continued substance abuse[4] and her entanglement

---

[4] Although respondent denied continued drug use at the termination hearing, there was strong evidence that she was continuing to use narcotics, most likely cocaine. A caseworker testified at length about out-of-court admissions in which respondent stated that she was using cocaine and had no plans to stop. These admissions were made in January 2021, about five months before the termination hearing. And it is undisputed that respondent had refused to submit to either voluntary or court-ordered drug screens since November 2020, even after she was informed that missed screens were presumed to be positive. Although such evidence is only circumstantial proof of respondent's continued drug use, "circumstantial evidence is oftentimes stronger and more

-4-

with violent men, the evidence clearly established that there was a reasonable likelihood that ID would suffer additional emotional harm if returned to respondent's care once again. For a young boy of ID's age, there is an undeniable risk of psychic trauma in watching one's mother both abuse drugs and be abused physically. For those reasons, the trial court's finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(j) was not clearly erroneous.[5]

Next, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in ID's best interests. We disagree.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). As explained in *In re Medina*:

> Although a reviewing court must remain cognizant that the fundamental liberty interest of natural parents in the care, custody, and management of their children does not evaporate simply because they have not been model parents or have lost temporary custody of their children to the State, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. Therefore, once a statutory ground for termination has been established by clear and convincing evidence, a preponderance of the evidence can establish that termination is in the best interests of the child. [*In re Medina*, 317 Mich App at 237 (quotation marks, citations, and brackets omitted).]

"In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *Id*. at 237 (quotation marks and citation omitted). We have explained:

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history

---

satisfactory than direct evidence." See *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992) (quotation marks and citation omitted). Hence, the trial court's finding that there was clear and convincing evidence that respondent was still using illicit drugs was not clear error.

[5] In light of that conclusion, we need not address respondent's claims of error concerning the other statutory grounds for termination cited by the trial court. See *In re Ellis*, 294 Mich App at 32 ("Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds."). In the interest of judicial efficiency, however, we note that, were we to address the issue, we would also find no clear error in the trial court's reliance on MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication), as a ground supporting termination in this case.

with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted).]

At the time of termination, ID and KB were placed together in the same preadoptive foster care placement where ID had resided for most of his young life, and the foster family included ID's brother, IT, whom the foster parents had already adopted. A caseworker testified that ID had a strong bond with both the foster parents and IT, whereas ID had developed only "a minimal bond" with respondent. In addition, the evidence indicated that ID had thrived in that foster care placement. In sum, it is clear that ID's placement represented a safe, stable, loving environment for him, and one that offered the promise of permanence.

On the other hand, although respondent was able to maintain suitable housing and a small stream of legal income throughout this case, she offered ID very little hope in terms of safety and permanency. Despite the attendant risks to herself and her children, she persisted in dating abusive men. And as already noted, the trial court did not clearly err by finding that she had failed to overcome her addiction issues, was again using cocaine, and had no plans to cease doing so. Respondent was also facing several serious criminal charges related to the January 2021 incident, and there was no evidence indicating that she would have been able to provide for ID's care and custody if she was ultimately convicted of those charges and sentenced to a term of imprisonment.

Indeed, standing alone, the January 2021 incident belies any claim that respondent has benefited from the myriad services that she has received in the past—or is likely to benefit from additional services in the future. Assuming that the allegations concerning what KB's father said to instigate the January 2021 incident are true, it is altogether understandable that respondent became upset and angry. Rather than reporting the purported threats to the police, her trial counsel, or caseworkers, respondent chose to drive to KB's father's place of employment—with an infant in her care—where she accosted him and spit on him. Her conduct provoked a violent response and the situation rapidly escalated. Respondent suffered serious injuries and ultimately chased KB's father with a car and used it to strike him and his vehicle. Over the years, respondent has repeatedly engaged in conduct that betrayed similar irrationality and poor decision-making, and she has continued to do so despite numerous interventions by petitioner and the repeated provision of services aimed to assist her. On this record, there is no basis to conclude that respondent is capable of providing a safe, suitable, permanent home for ID. For those reasons, we find no clear error in the trial court's finding by a preponderance of the evidence that termination of respondent's parental rights was in ID's best interests.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Sima G. Patel